STATE of Wisconsin, Plaintiff-Respondent,

v.

Johnny L. GREEN, Defendant-Appellant-Petitioner.

Supreme Court

*No. 00–1392–CR. Oral argument January 11, 2002.—Decided June 25, 2002.*

2002 WI 68

(Also reported in 646 N.W.2d 298.)

For the defendant-appellant-petitioner there were briefs by *Nicolas G. Griswold,* Muskego, and oral argument by *Nicolas G. Griswold.*

For the plaintiff-respondent the cause was argued by *Daniel J. O'Brien,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

¶ 1. WILLIAM A. BABLITCH, J. Petitioner Johnny Green (Green) seeks review of a decision from the court of appeals that upheld his conviction for first-degree sexual assault as a repeat offender. Green

argues that the circuit court erred in two respects: (1) by failing to conduct an in camera review of the victim's counseling records and (2) by concluding that the prosecutor did not violate a sequestration order. The court of appeals concluded that the circuit court did not err in either respect. We agree. Accordingly, we affirm the decision of the court of appeals.

## I. BACKGROUND

¶ 2. Green was charged in Winnebago County Circuit Court with one count of first-degree sexual assault of a child as a repeat offender, in violation of Wis. Stat. §§ 948.02(1) and 939.62(1)(c) (1997-98).[1] The State of Wisconsin (State) alleged that Green had sexual contact with N.W., a child under the age of 13 years, on or about November 1996. Green and his girlfriend, Lisa Russell, lived with N.W. and N.W.'s mother for a short period during this time.

¶ 3. N.W. did not inform anyone of the sexual assault until March 28, 1997, at which time she informed Russell. That same day, N.W. informed her mother. The police were contacted.

¶ 4. On April 10, 1997, Detective Robert Quant of the City of Oshkosh Police Department and Rod Schraufnagel of the Winnebago County Department of Social Services interviewed N.W. and her mother about the sexual assault. N.W. told them that, while she was lying on her bed, Green laid down beside her and proceeded to touch her breasts and vagina outside of her pajamas. N.W. alleged that this contact occurred around the time she was taken to the hospital because of vaginal bleeding. This hospital visit occurred on or

---

[1] All subsequent references to the Wisconsin Statutes are to the 1997-98 version unless otherwise indicated.

about November 22, 1996, at which time N.W. was diagnosed with a urinary tract infection. During the interview with Quant and Schraufnagel, N.W. also reported that Green told her that he would kill her if she told anyone. N.W.'s mother told Quant and Schraufnagel that N.W. had not told her of many details surrounding the alleged assault and that N.W. was seeing a counselor, Jeanie Roberts, for the purpose of discussing the assault.

¶ 5.　More than a year later, on October 20, 1998, Detective Quant again interviewed N.W. During this interview, N.W. alleged the following. On the day of the assault, she was home alone with Green, and Green called her into her bedroom to watch television with him. When N.W. entered the room, Green was lying on the bed. N.W. sat on the bed, and Green pulled her to him. Green then climbed on top of her and pulled her pajama bottoms down. Green then allegedly penetrated her vagina with his penis. Green did not stop until she told him that she had to go to the bathroom. Then, instead of going to the bathroom, she tried to run outside, but Green stopped her and told her that if she told anyone, he would kill her and her mom. Green then took her to a gas station to buy candy and a beanie baby. Soon after they arrived home, N.W.'s mother arrived home. A short time later, N.W. told her mother that she was urinating blood. Her mother then took her to the hospital.

¶ 6.　About two months later, on December 14, 1998, Green was charged for having sexual intercourse with N.W. The complaint included the details, as discussed above, of N.W.'s April 10, 1997 and October 20, 1998 statements to the police. The complaint did not contain any information about N.W. seeing a counselor.

¶ 7. The complaint also included details from an interview that Quant conducted with Russell. Russell told Quant that she remembered when Green had purchased the beanie baby for N.W. Russell stated that at that time she sensed N.W. was upset about something, but N.W. did not say anything. Russell also alleged that on one occasion Green admitted to her that he had "fondled" or "fiddled" N.W. Russell stated that, after telling Green that he was a "sick bastard," Green told her he was "only kidding to see how you would act."

¶ 8. On January 5, 1999, the circuit court, the Honorable Bruce K. Schmidt presiding, held a preliminary hearing on the charges against Green. N.W. testified during this hearing. She alleged that Green did not touch her breasts or her vagina through her clothes. She maintained that he had sexual intercourse with her. During her testimony, she stated that she went over to a friend's house immediately after the assault and that Green went over to get her. She stated that she did not go anywhere else that evening and that she did not go to the hospital until the following day. After hearing testimony from N.W. and N.W.'s mother, the court found probable cause and bound the matter over for further proceedings.

¶ 9. On February 10, 1999, the court held a pre-trial hearing, addressing in part a motion for discovery filed by Green. Green's trial counsel informed the court that he had recently received a document from the State summarizing the April 10, 1997 interview. This document—a three-page interview summary written by Schraufnagel—made reference to N.W. attending counseling with Roberts. Based on this discovery, Green's trial counsel made an oral motion requesting the court to issue a subpoena duces tecum to obtain N.W.'s counseling records. He alleged that the counseling

records were important in light of the fact that N.W. did not tell anyone that sexual penetration had occurred until October 1998, almost two years after the alleged assault occurred. Green therefore wanted to know what N.W. told Roberts. He argued that the counseling records "may contain inconsistent statements." The State responded that it did not have any records from these counseling sessions and that it did not intend to introduce any testimony concerning these sessions at trial. Based on these arguments, the court denied the motion.

¶ 10.    Green was tried before a jury over a three-day period on the sexual assault charge. Prior to trial, the court issued a sequestration order, which applied to "all prosecution and defense witnesses during the trial, apart from Det. Quant of the Oshkosh Police Department, who by virtue of being the lead investigator in the case should remain at the prosecution table."

¶ 11.    On the second day of trial, the prosecutor called Cheryl Haack, one of Green's friends, as a witness. Haack testified on direct examination that, on November 13, 1996, Green told her that he sexually assaulted N.W. Haack reiterated this statement on cross-examination. Haack's testimony was inconsistent with a prior statement that she had provided to the police, which alleged that her conversation with Green occurred in January or February 1997. Haack admitted at trial that after giving this statement she later learned that Green had been in jail during January and February 1997. She testified that she later realized that the correct date was November 13, 1996, after reviewing a calendar that she had kept during that time. Following cross-examination and redirect examination, Haack was excused as a witness.

¶ 12. The State then called another witness to testify. After this witness, the prosecutor recalled Haack to clarify the date on which Green confessed to her that he assaulted N.W. Green objected to Haack being recalled by the State, but the court allowed her to testify. During her testimony, Haack modified her previous testimony, asserting that Green confessed to her on November 19, 1996, not on November 13, 1996. Haack admitted that she had discussed the discrepancy of the date with the prosecutor in the hall during a break in trial proceedings after her testimony. The prosecutor admitted to a conversation with Haack, but stated that it occurred during a break in Green's cross-examination of Haack.

¶ 13. After the State rested its case, Green brought a motion to dismiss, alleging that the prosecutor had committed misconduct by violating the sequestration order by communicating with Haack during a break in trial and then recalling Haack as a witness to clarify her previous testimony. The court denied this motion.

¶ 14. The jury found Green guilty of first-degree sexual assault of a child as a repeat offender. He was sentenced to 42 years in prison.

¶ 15. In a post-conviction motion, Green requested a new trial asserting that the circuit court should have conducted an in camera review of N.W.'s counseling records pursuant to *State v. Shiffra,* 175 Wis. 2d 600, 499 N.W.2d 719 (Ct. App. 1993). He also argued that he was entitled to a new trial because the State had violated the sequestration order by communicating trial information to its witness during the course of the trial.

¶ 16. After a hearing, the court denied the post-conviction motion. The court ruled that Green never

366

met his burden under *Shiffra* to compel the court to conduct an in camera review of N.W.'s counseling records. The court also determined that a violation of the sequestration order had not occurred. Green appealed.

¶ 17. The court of appeals, in an unpublished opinion, also held that Green failed to make a sufficient pretrial showing to entitle him to an in camera review of N.W.'s counseling records. The court, citing *Shiffra*, stated that Green was required to make a preliminary showing that the evidence sought was "relevant and necessary to a fair determination of guilt or innocence." More specifically, Green was required to show "specific facts which would bear upon the witness's ability to accurately perceive events, remember or testify." The court concluded that Green had failed to offer any factual showing that the counseling records could contain information that would show N.W.'s inability to perceive events, remember or testify.

¶ 18. The court also rejected Green's claim that the State had violated the sequestration order by conversing with its witness in the hallway during a break in the trial proceedings. The court stated that the purpose of such an order was to prevent the shaping of testimony by one witness to match that of other witnesses. Green, however, failed to cite any authority that a general sequestration order requires witnesses to also be sequestered from the prosecutor. Green's appropriate remedy, the court noted, would have been to move to strike the witness's testimony or request a mistrial. Regardless, the court held that, even assuming that there had been a violation of the sequestration order, Green did not suffer any prejudice because Haack was a terrible witness for the State and because her lack of credibility had been amply demonstrated.

## II. QUESTIONS PRESENTED

¶ 19. We address two issues. First, we examine whether Green met his burden at the pretrial hearing to compel the circuit court to conduct an in camera review of N.W.'s counseling records. This question necessarily involves a determination of the standard to be applied when a defendant seeks an in camera review. We conclude that the standard to obtain an in camera review requires a defendant to set forth, in good faith, a specific factual basis demonstrating a reasonable likelihood that the records contain relevant information necessary to a determination of guilt or innocence and is not merely cumulative to other evidence available to the defendant. Applying a de novo standard of review, we conclude that the circuit court did not err in failing to conduct such a review in this case because Green failed to meet his burden to compel review. Second, we examine whether the sequestration order issued by the circuit court was violated when the prosecutor consulted with a witness during a break in trial and later recalled that witness to clarify the witness's previous testimony. We conclude that the consultation between the prosecutor and the witness in this case was not a violation of the sequestration order, and that, even if it was, Green has not shown any prejudice that resulted from this violation. The circuit court and the court of appeals both properly denied finding error. We affirm the court of appeals' ruling.

## III. IN CAMERA REVIEW

### A. Standard of Review

¶ 20. Green first alleges that the circuit court erred by failing to conduct an in camera review of N.W.'s

counseling records.[2] The defendant bears the burden of making a preliminary evidentiary showing before an in camera review is conducted by the court. *Shiffra,* 175 Wis. 2d at 605. Factual findings made by the court in its determination are reviewed under the clearly erroneous standard. *Id.* Whether the defendant submitted a preliminary evidentiary showing sufficient for an in camera review implicates a defendant's constitutional right to a fair trial and raises a question of law that we review de novo. *State v. Ballos,* 230 Wis. 2d 495, 500, 602 N.W.2d 117 (Ct. App. 1999); *State v. Munoz,* 200 Wis. 2d 391, 395, 546 N.W.2d 570 (Ct. App. 1996).[3] If we determine the requisite showing was made, the defendant is not automatically entitled to a remand for an in camera review. The defendant still must show the error was not harmless. *Ballos,* 230 Wis. 2d at 501.

---

[2] Green argues that N.W. waived her privilege to her counseling records because her mother signed releases to these records. In the interview summary written by Schraufnagel, it stated that N.W.'s mother "signed releases of information so Mercy Medical Center and the counselor in Appleton could share the information that they have regarding [N.W.]." The record does not contain any other information on these releases.

Green failed to raise any waiver of privilege argument on appeal prior to his reply brief to this court. For this reason, we conclude that Green effectively waived review of this issue. *Ford Motor Co. v. Lyons,* 137 Wis. 2d 397, 417, 405 N.W.2d 354 (Ct. App. 1986) ("[T]he failure to include alleged errors in the motions after verdict constitutes a waiver of the errors."). In seeking post-conviction relief, Green has proceeded with the understanding that these records are privileged. We proceed similarly.

[3] We granted review in this case in part to determine this question on standard of review. The parties, however, no longer dispute that this preliminary showing is a question of law that we review de novo.

## B. *Shiffra*

¶ 21.   To determine whether Green met his burden, we first examine *Shiffra,* the case in which the court of appeals established that a defendant may obtain an in camera review of such privileged records upon a showing of materiality.[4]

¶ 22.   Shiffra was charged with second-degree sexual assault, and one day before trial, he received evidence from the state showing that the victim had a history of psychiatric problems. *Shiffra,* 175 Wis. 2d at 603. He therefore moved for an adjournment arguing that he had recently received information from the state " 'which indicate[d] that . . . the complaining witness has a history of psychiatric problems which may affect her ability to perceive and relate truthful information.' " *Id.* The court granted the adjournment, and subsequently, Shiffra moved for an order requiring the state and the victim to provide him with the victim's

---

[4] The State contends that the holding in *State v. Shiffra,* 175 Wis. 2d 600, 499 N.W.2d 719 (Ct. App. 1993) was in error because it relied on *Pennsylvania v. Ritchie,* 480 U.S. 39 (1987). The State argues that *Ritchie* was distinguishable and therefore inapplicable because it involved a situation, unlike here, where the records were in the government's possession. The *Shiffra* court, however, specifically rejected this argument, concluding that it was bound by Wisconsin precedent, which clearly made *Ritchie* applicable in cases where the information sought by the defense is not in the possession of the state. *Shiffra,* 175 Wis. 2d at 606–07 (citing *State v. S.H.,* 159 Wis. 2d 730, 736, 465 N.W.2d 238 (Ct. App. 1990), and *In re K.K.C.,* 143 Wis. 2d 508, 511, 422 N.W.2d 142 (Ct. App. 1988)). This court recognized the validity of *Shiffra* in *State v. Solberg,* 211 Wis. 2d 372, 386–87, 564 N.W.2d 775 (1997), and in *State v. Rizzo,* 2002 WI 20, ¶ 53, 250 Wis. 2d 407, 640 N.W.2d 93. We will not depart from this precedent.

psychiatric records and medical records. *Id.* At the hearing on the motion to compel, Shiffra argued that his theory of defense was that the sexual contact was consensual and that he sought review of the records only to obtain evidence concerning whether the complainant may have suffered from " 'some type of psychiatric disorder which causes her an inability to truthfully relate facts as she perceives them' " or from " 'some disorder which causes her to have flashbacks to previous instances in her life and then they become sexual assaults of her because of her disorders.' " *Id.* The circuit court found an adequate showing and ordered an in camera review of the complainant's records. *Id.* at 604. The state appealed.

¶ 23. On review, the court of appeals affirmed. In its analysis, the court began by noting the competing rights and interests involved when a defendant seeks an in camera review of privileged records. On the one hand, a criminal defendant's right to due process, in particular the right to a meaningful opportunity to present a complete defense, is implicated. *Id.* at 605 and n.1. On the other hand, the state has an interest in protecting a patients' privileged records, Wis. Stat. § 905.04(2),[5] from being disclosed. In balancing

---

[5] This statute provides:

    (2) General rule of privilege. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made or information obtained or disseminated for purposes of diagnosis or treatment of the patient's physical, mental or emotional condition, among the patient, the patient's physician, the patient's registered nurse, the patient's chiropractor, the patient's psychologist, the patient's social worker, the patient's marriage and family therapist, the patient's professional counselor or persons, including members of the patient's family, who are participating in the diagnosis or treatment under the direction of the physician, registered nurse,

these interests, the *Shiffra* court concluded that an in camera review was appropriate. *Id.* A defendant, however, is not automatically entitled to such an in camera review upon request. Instead, "[t]o be entitled to an in camera inspection, the defendant must make a preliminary showing that the sought-after evidence is material to his or her defense." *Id.* (citing *State v. S.H.,* 159 Wis. 2d 730, 738, 465 N.W.2d 238 (Ct. App. 1990)).

¶ 24.  In establishing the burden for this preliminary showing, the *Shiffra* court analogized to cases where a defendant seeks disclosure of a government informant's identity, which is also protected by privilege pursuant to statute.[6] The court noted that, as in cases involving privileged psychiatric records, similar competing rights and interests are implicated in government informant cases. *Shiffra,* 175 Wis. 2d at 609. In government informant cases, a defendant may obtain an in camera review if he or she provides sufficient evidence to show "that an informer may be able to give testimony necessary to a fair determination of the issue of guilt or innocence in a criminal case . . . ." *Id.* at 609 n.3.  This  burden  is  reflected  in  Wis. Stat. § 905.10(3)(b).[7]

---

chiropractor, psychologist, social worker, marriage and family therapist or professional counselor.

[6] Wisconsin Stat. § 905.10(1) states in relevant part:

Identity of informer. (1) Rule of privilege. The federal government or a state or subdivision thereof has a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of law to a law enforcement officer . . . .

[7] Wisconsin Stat. § 905.10(3)(b) states:

(3) Exceptions.

. . . .

¶ 25. The court adopted a similar standard for defendants seeking to compel an in camera review of a victim's privileged psychiatric records. The *Shiffra* opinion, however, contained some internal inconsistencies in setting forth the specific test. At one point in the opinion, the *Shiffra* court concluded "that the defendant's burden should be to make a preliminary showing that the sought-after evidence *is relevant and may be helpful to the defense or is necessary to a fair determination of guilt or innocence.*" *Id.* at 608 (emphasis added). However, in a later part of the opinion the court enumerated the test as "*may be necessary to a fair determination of guilt or innocence.*" *Id.* at 610 (emphasis added). The *Munoz* court noted this inconsistency, but embraced the "may be necessary" language as the appropriate test, stating:

> The broad language of *Shiffra*—"that the sought-after evidence is relevant and *may be helpful* to the defense,"—certainly would seem to suggest a very low threshold for a defendant to establish the basis for an *in camera* inspection. A closer reading of *Shiffra,* however, reveals that a defendant must establish more

---

(b) Testimony on merits. If it appears from the evidence in the case or from other showing by a party that an informer may be able to give testimony necessary to a fair determination of the issue of guilt or innocence in a criminal case . . . and . . . a state . . . invokes the privilege, the judge shall give the . . . state . . . an opportunity to show in camera facts relevant to determining whether the informer can, in fact, supply that testimony.

We have stated that this burden "does not place a significant burden upon the party seeking disclosure." *State v. Outlaw,* 108 Wis. 2d 112, 125, 321 N.W.2d 145 (1982). "The showing need only be one of a possibility that the informer could supply testimony necessary to a fair determination." *Id.* at 126.

than "the mere possibility" that psychiatric records "may be helpful" in order to justify disclosure for an *in camera* inspection.

[A]lthough *Shiffra's* reference to information that "is relevant and *may be helpful to the defense*" could cover almost anything the defense sought to discover, *Shiffra* did not repeat the "may be helpful" language elsewhere in the opinion but, instead, reiterated the standard: "may be necessary to a fair determination of guilt or innocence."

*Munoz,* 200 Wis. 2d at 397–98 (citations omitted).[8] In cases subsequent to *Munoz,* the court of appeals has followed the *Munoz* court's interpretation of *Shiffra* and applied the "may be necessary to a fair determination of guilt or innocence" standard. *See State v. Navarro,* 2001 WI App 225, ¶ 11, 248 Wis. 2d 396, 636 N.W.2d 481; *State v. Walther,* 2001 WI App 23, ¶ 10, 240 Wis. 2d 619, 623 N.W.2d 205 (Ct. App. 2000).

¶ 26.   In the end, the *Shiffra* court concluded that Shiffra had met his burden in making a preliminary showing of materiality. The court noted that Shiffra had "presented ample evidence during the hearing on his discovery motion that [the victim's] psychiatric difficul-

---

[8] The "relevant and helpful" standard tracked language, which was quoted in *Shiffra,* from *Roviaro v. U.S.,* 353 U.S. 53, 60–61 (1957), a seminal case on a defendant's right to discover the identify of a government informant. *See Shiffra,* 175 Wis. 2d at 608. The "may be necessary" language tracked the language in Wis. Stat. § 905.10(3)(b). Because the *Shiffra* court appeared to rely more heavily on the statutory language than on *Roviario* in establishing its standard, it is reasonable to conclude that the court intended to adopt and apply the standard established in the statute. *See Shiffra,* 175 Wis. 2d at 609–10. Thus, the court of appeals was correct in relying on the "may be necessary" language.

374

ties might affect both her ability to accurately perceive events and her ability to relate the truth." *Shiffra,* 175 Wis. 2d at 612. These difficulties, the court reasoned, were relevant because they affected the complainant's credibility *and* bore directly on Shiffra's defense of consensual sex. *Id.*

¶ 27.   Before concluding, the *Shiffra* court considered the state's argument that the victim's psychiatric records may contain information that was "merely cumulative" to information that was already available to him. *Id.* at 610. The state described the significant amount of information that Shiffra had available to him on the victim's mental health history that was contained outside the records. *Id.* at 610–11. This evidence showed the extensive history of the victim's mental health problems and strongly suggested that Shiffra's specific concerns about the victim experiencing flashbacks and about her ability to relay truthful information were valid. The court recognized that some of the information contained in the records may be cumulative, but it nevertheless allowed for an in camera review, stating:

> We disagree with the state. It may well be that the evidence contained in the psychiatric records will yield no information different from that available elsewhere. However, the probability is equally as great that the records contain independently probative information. It is also quite probable that the *quality* and the probative *value* of the information in the reports may be better than anything that can be gleaned from other sources. Finally, the information might well serve as a *confirmation* of Pamela's [the victim's] problems in sexual matters. It is the duty of the trial court to determine whether the records have any independent probative value after an *in camera* inspection of the records.

*Id.* at 611. *See also Navarro,* 2001 WI App 225, ¶ 18 (concluding that an in camera review of confidential prison records was still warranted despite concerns that the information may be cumulative).

## C. Standard for a Preliminary Showing

¶ 28.  Both parties seek to clarify and further define the standard for a preliminary showing for an in camera review established in *Shiffra.* Green argues that it is sufficient for a defendant to show, as *Shiffra* contemplated, that the evidence contained in the records "may be helpful to his or her defense." This showing is sufficient, he asserts, because the request is often made without the defendant's knowledge as to what information is specifically contained in the records. Therefore, a defendant should not be required to identify the exact information contained in the records that is material to his or her defense. In addition, the request is often made at the pretrial stage, when discovery is for the most part not yet completed and it is often impossible for the defendant to state that the information contained in the records will be necessary to the outcome of the case. It is a preliminary request to have the court simply look at the documents. Green also argues that there is no real difference between a requirement that the counseling records "may be helpful" and one that the records "may be necessary" because they both require a mere possibility that the records will assist the defendant. Green also points to *State v. Hoag,* 749 A.2d 331 (N.H. 2000) as setting forth an appropriate standard. *Hoag* states in relevant part:

> The threshold showing necessary to trigger an *in camera* review is not unduly high. The defendant must

> meaningfully articulate how the information sought is relevant and material to his defense. *To do so, he must present a plausible theory of relevance and materiality sufficient to justify review of the protected documents, but he is not required to prove that his theory is true.* At a minimum, a defendant must present some specific concern, based on more than bare conjecture, that, in reasonable probability, will be explained by the information sought.

*Id.* at 333 (emphasis added to show relevant language relied on by Green). This "plausible theory" standard, Green contends, provides the appropriate balance between maintaining the privileged nature of these records and affording a defendant his or her right to present a complete defense.

¶ 29.   The State argues that it is clear from *Shiffra* and subsequent cases interpreting *Shiffra* that the court of appeals intended to adopt the "relevant and may be necessary to a fair determination of guilt or innocence" standard, similar to the standard required for cases involving government informants. The State argues that, under this standard, the defendant is required to clearly articulate what information he or she is seeking and how this information ties in to his or her particular defense. A vague proffer of need by the defendant is insufficient. Further, the State contends that the mere assertion that information might be helpful or useful to the defendant's case is insufficient. The records must contain information that is likely exculpatory for the defendant. In reaching this conclusion, the State relies on *Goldsmith v. State,* 651 A.2d 866 (Md. 1995). It states in relevant part:

> We agree with the Supreme Court of Michigan that in assessing a defendant's right to privileged records, the required showing must be more than the fact that the

records "may contain evidence useful for impeachment on cross-examination. This need might exist in every case involving an accusation of criminal sexual conduct." *People v. Stanaway,* 446 Mich. 643, 521 N.W.2d 557, 576 (1994) (footnotes omitted). . . .

We therefore hold that in order to abrogate a privilege such as to require disclosure at trial of privileged records, *a defendant must establish a reasonable likelihood that the privileged records contain exculpatory information necessary for a proper defense.*

*Id.* at 876–77 (emphasis added to show relevant language relied on by the State). Based on this standard in *Goldsmith,* the State urges us to require a defendant to "make a specific preliminary showing that the counseling records will produce evidence that is relevant to material issues in dispute and likely exculpatory of the defendant."

¶ 30.   Before we set forth our standard, we note two things. First, we conclude that it is clear that the court of appeals has adopted the "may be necessary" standard as enumerated in *Shiffra. See Walther,* 2001 WI App 23, ¶ 10 (rejecting the argument that other court of appeals' cases imposed a heightened standard). We conclude that this is a correct interpretation of *Shiffra* and was certainly the standard that was in place, pursuant to *Munoz,* at the time of the motion hearing in Green's case.

¶ 31.   Second, we emphasize that the defendant in this case is trying to make a *preliminary* showing to compel an in camera review by the circuit court. As such, a defendant is not required to carry the same burden as that required of the circuit court when it conducts its in camera inspection to determine whether

378

to disclose the records. We discussed the circuit court's role during its in camera review in *State v. Solberg,* 211 Wis. 2d 372, 564 N.W.2d 775 (1997). In particular, we stated that, "[i]n conducting an *in camera* inspection of an alleged victim's privileged records, the circuit court must determine whether the records contain *any relevant information that is ' "material" to the defense of the accused.' " Id.* at 386–87 (emphasis added) (quoting *Pennsylvania v. Ritchie,* 480 U.S. 39, 58, 107 S.Ct. 989, 1001–02, 94 L.Ed.2d 40 (1987)). The preliminary burden for seeking an in camera review must be less stringent than the standard applied by the court during its in camera inspection.

¶ 32.   The *Shiffra* court appropriately rejected the materiality standard set forth in *Pennsylvania v. Ritchie,* 480 U.S. 39, 57 (1987) (asking whether the evidence would have had an effect on the proceeding), as difficult to apply before trial. *Shiffra,* 175 Wis. 2d at 607; *see also State v. Richard A.P.,* 223 Wis. 2d 777, 785, 589 N.W.2d 674 (Ct. App. 1999). Instead, the court appropriately looked to the standard for a defendant seeking to overcome the informant privilege. This standard requires that the defendant show that the informant's testimony "may be necessary to a determination of guilt or innocence." A mere possibility ("may be") is enough in informant cases. In light of the strong public policy favoring protection of the counseling records, however, we conclude that a slightly higher standard is required before the court must conduct an in camera review of privileged counseling records. For this reason, we conclude, consistent with other state standards, that a defendant must show a "reasonable likelihood" that the records will be necessary to a determination of guilt or innocence. *See Goldsmith,* 651

A.2d at 133–34 ("a defendant must establish a reasonable likelihood that the privileged records contain exculpatory information necessary for a proper defense"); *People v. Stanaway,* 521 N.W.2d 557, 574 (Mich. 1994) (a defendant must show "a good-faith belief, grounded in some demonstrable fact, that there is a reasonable probability that the records are likely to contain material information necessary to the defense"); *State v. Pinder,* 678 So. 2d 410, 417 (Fla. Dist. Ct. App. 1996) ("a defendant must first establish a reasonable probability that the privileged matters contain information necessary to his defense"); *compare Commonwealth v. Fuller,* 667 N.E.2d 847, 855 (Mass. 1997) (a defendant must show "a good faith, specific, and reasonable basis for believing that the records will contain exculpatory evidence which is relevant and material to the issue of the defendant's guilt").

¶ 33.    Although we change this threshold showing requirement from *Shiffra,* we conclude that other requirements adopted by the court of appeals in similar cases remain applicable. In particular, a defendant must set forth a fact-specific evidentiary showing, describing as precisely as possible the information sought from the records and how it is relevant to and supports his or her particular defense. *See, e.g., Navarro,* 2001 WI App 225, ¶¶ 12, 17; *Walther,* 2001 WI App 23, ¶ 11. The mere contention that the victim has been involved in counseling related to prior sexual assaults or the current sexual assault is insufficient. *Munoz,* 200 Wis. 2d at 399. Further, a defendant must undertake a reasonable investigation into the victim's background and counseling through other means first before the records will be made available. From this investigation, the defendant, when seeking an in camera review, must then make a

sufficient evidentiary showing that is not based on mere speculation or conjecture as to what information is in the records. *See State v. Darcy N.K.*, 218 Wis. 2d 640, 645, 656, 581 N.W.2d 567 (Ct. App. 1998). In addition, the evidence sought from the records must not be merely cumulative to evidence already available to the defendant. A defendant must show more than a mere possibility that the records will contain evidence that may be helpful or useful to the defense. *Munoz*, 200 Wis. 2d at 397–98.

¶ 34.   Based on the above considerations, we set forth the following standard:   the preliminary showing for an in camera review requires a defendant to set forth, in good faith, a specific factual basis demonstrating a reasonable likelihood that the records contain relevant information necessary to a determination of guilt or innocence and is not merely cumulative to other evidence available to the defendant. We conclude that the information will be "necessary to a determination of guilt or innocence" if it "tends to create a reasonable doubt that might not otherwise exist." *See Fuller*, 667 N.E.2d at 855. This test essentially requires the court to look at the existing evidence in light of the request and determine, as the *Shiffra* court did, whether the records will likely contain evidence that is independently probative to the defense.

¶ 35.   In creating this standard, we intend to place the burden on the defendant to reasonably investigate information related to the victim before setting forth an offer of proof and to clearly articulate how the information sought corresponds to his or her theory of defense. A good faith request will often require support through motion and affidavit from the defendant. Our standard

is not intended, however, to be unduly high for the defendant before an in camera review is ordered by the circuit court. The defendant, of course, will most often be unable to determine the specific information in the records. Therefore, in cases where it is a close call, the circuit court should generally provide an in camera review. *See Walther,* 2001 WI App 23, at ¶ 14. We have confidence in the circuit courts to then make a proper determination as to whether disclosure of the information is necessary based on the competing interests involved in such cases. *See Shiffra,* 175 Wis. 2d at 611. A circuit court may always defer ruling on such a request or require a defendant to bring a subsequent motion if the record has not had time to develop. A motion for seeking discovery for such privileged documents should be the last step in a defendant's pretrial discovery.

D. Green's Preliminary Showing

¶ 36.　We conclude that, under either the *Shiffra* standard or the slightly heightened standard set forth in this opinion, any showing by Green at the circuit court was insufficient to compel the court to conduct an in camera review of N.W.'s records. We therefore affirm the court of appeals' conclusion.

¶ 37.　At the pretrial hearing, Green merely argued that N.W.'s counseling records could contain statements from N.W. that were inconsistent with her statements provided to the police and to social services. The mere assertion, however, that the sexual assault was discussed during counseling and that the counseling records may contain statements that are inconsistent with other reports is insufficient to compel an in camera review. Green was required to show that the evidence

was independently probative, that is not cumulative, and to show that the evidence was material to his particular defense. Green established neither. Further, he failed to show any evidence to even remotely suggest that N.W. suffered from any psychological disorder that hindered her ability to relay truthful information. *See Jessica J.L. v. State,* 223 Wis. 2d 622, 635, 589 N.W.2d 660 (Ct. App. 1998) (in seeking such records based on inconsistent statements, a defendant must show, through other evidence, that the records will "tend to prove that [the child] has a psychological disorder that would make her a poor reporter of events relating to sexual conduct or draw her credibility into question in any way"). Certainly, Green had access to other reports from the police and social services which showed that N.W. had changed her story over time; he could have attacked (and did attack at trial) her credibility with these inconsistent statements. We therefore conclude that Green did not meet his burden under any applicable standard for an in camera inspection by the court. This is, as the court of appeals noted, not even a close call.[9]

---

[9] Several assertions made by Green to this court to support a remand for an in camera review were never presented in his evidentiary showing to the circuit court. For example, Green argues that the evidence shows that N.W. may have started counseling earlier than the date on which she reported the assault to authorities. We find no evidence to support this assertion. Nevertheless, Green argues that, if this were true, it shows that N.W. delayed reporting for an even longer time, making the records an even greater source for inconsistent statements or otherwise exculpatory evidence. Green cannot now bolster his evidentiary showing for N.W.'s records by adding additional factors that may have been relevant at the circuit court to grant an in camera review but were never presented to the court.

## IV. SEQUESTRATION ORDER

¶ 38.  Green also argues that the prosecutor vio-
lated the circuit court's sequestration order when she
communicated with Haack during a break in trial
testimony about an alleged date on which Green con-
fessed the assault to her. This violation of the order,
Green contends, resulted in prejudice to him because
Haack effectively altered her testimony to more closely
match other evidence presented against Green at trial.
Green argues that he is now entitled to a new trial
based on this prejudicial testimony.

¶ 39.  If the circuit court finds that a witness has
violated the court's sequestration order, the court may
still permit the witness to testify. The court should not
allow such testimony, however, when the defendant has
been prejudiced by the violation and the party calling
the witness was a guilty participant in the violation.
*State v. Bembenek,* 111 Wis. 2d 617, 637, 331 N.W.2d 616
(Ct. App. 1983).

¶ 40.  Green contends that the prosecutor, not the
witness, violated the sequestration order by conversing
with the witness during trial. Green fails to clearly
indicate, however, how any alleged conversation consti-
tuted a violation of the sequestration order. The only
applicable order issued by the court limited the seques-
tration to "all prosecution and defense witnesses during
the trial, apart from Det. Quant of the Oshkosh Police
Department, who by virtue of being the lead investiga-
tor in the case should remain at the prosecution counsel
table." Such orders are issued to keep witnesses from
hearing other witnesses testimony, which may lead to

prejudice to the defendant. *See Nyberg v. State,* 75 Wis. 2d 400, 407, 249 N.W.2d 524 (1977); *see also* Wis. Stat. § 906.15(1). Green has not provided any support for the contention that a prosecutor violates a sequestration order by merely talking to his or her witnesses. There are no allegations that Haack heard testimony of other witnesses in the courtroom, that Haack discussed her testimony with other witnesses, or that the prosecutor discussed the testimony of other witnesses with Haack. We find no violation of the order in this case.

¶ 41.  Further, even if this discussion did constitute a violation, Green has not shown any prejudice from this violation. This conversation between Haack and the prosecutor allegedly resulted in testimony from Haack where she corrected the date on which Green had confessed the assault to her. According to Green, Haack corrected this date (to November 19, 1996) to more closely align her testimony with the date of the alleged assault (November 22, 1996). We cannot conclude that this conversation and subsequent mere clarification testimony from Haack had any significant effect on the overall trial or resulted in prejudice to Green—particularly considering that this was the third date that Haack had given for the alleged confession and Green's defense counsel showed the inconsistency in Haack's statements on cross-examination. As a result, we affirm the court of appeals' ruling on this issue, which upheld the circuit court's finding of no error.

## V. CONCLUSION

¶ 42.  In sum, we conclude that Green's conviction should be upheld. Under any applicable standard, Green failed to show that he was entitled to an in

camera review of N.W.'s counseling records. Further, he failed to show any error of the sequestration order by the State in consulting with its witness during trial or prejudice from any alleged violation. Accordingly, the decision of the court of appeals must be affirmed.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 43. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(concurring)*. In the present case, the defendant argues that the State violated the circuit court's witness "sequestration" order when the prosecutor communicated with a State's witness during a break in that witness's trial testimony.[1] If the attorney violated the court order, the error was harmless.

¶ 44. I write separately to urge that exclusion and separation orders be stated with particularity to avoid misunderstandings.[2] Although the practice of limiting a witness's access to other witnesses can be traced to English and Germanic law,[3] many open questions remain about the limitations a court may prescribe.

---

[1] The State moved the court for "[a]n Order sequestering all prosecution and defense witnesses during the trial, apart from Det. Quant of the Oshkosh Police Department, who by virtue of being the lead investigator in the case should remain at the prosecution counsel table." The circuit court stated, "the Court will grant [the sequestration] motion. All witnesses will be sequestered. Detective Quant, who's the lead investigator, we'll allow him to remain at counsel table."

[2] For discussions of exclusion and separation orders, see 6 Wigmore, *Evidence* ch. 63 (Chadbourn rev. 1976); Daniel Blinka, 7 *Wisconsin Practice: Wisconsin Evidence* § 615.1 at 456 (2d ed. 2001); John W. Strong, 1 *McCormick on Evidence* § 50 at 206–11 (1999).

[3] *Geders v. United States,* 425 U.S. 80, 87 (1976).

¶ 45. Wisconsin Stat. § 906.15 governs both the exclusion and the separation of witnesses. Although the statute uses the words "exclusion" and "separation" to mean different procedures, the two words are often used interchangeably in the cases. Sequestration is also used to refer to exclusion or separation or both.[4]

¶ 46. "Exclusion" means to remove witnesses from a courtroom and, according to § 906.15(1), is mandatory upon request. Section 906.15(1) provides that upon the request of a party, the judge or the court commissioner "shall order witnesses excluded so that they cannot hear the testimony of other witnesses." A judge or court commissioner may also make the order on his or her own motion.[5] Section 906.15(1), however, does not authorize excluding certain individuals, such as a party or a victim, among others.[6]

---

[4] *See, e.g., Nyberg v. State,* 75 Wis. 2d 400, 409, 249 N.W.2d 524 (1977), *overruled on other grounds by State v. Ferron,* 219 Wis. 2d 481, 579 N.W.2d 654 (1998).

[5] Wis. Stat. § 906.15(1).

[6] According to Wis. Stat. § 906.15(2), subsection (1) does not authorize exclusion of any of the following:

(a) A party who is a natural person.

(b) An officer or employee of a party which is not a natural person designated as its representative by its attorney.

(c) A person whose presence is shown by a party to be essential to the presentation of the party's cause.

(d) A victim, as defined in s. 950.02(4) in a criminal case or a victim, as defined in s. 938.02(20m) in a delinquency proceeding under ch. 938, unless the judge or circuit court commissioner finds that exclusion of the victim is necessary to provide a fair trial for the defendant or a fair fact-finding hearing for the juvenile. The presence of a victim during the testimony of other witnesses may not by itself be a basis for a finding that

¶ 47. "Separation" means to remove witnesses from a courtroom to separate areas. According to Wis. Stat. § 906.15(3), the judge or court commissioner "may direct that all excluded and non-excluded witnesses be kept separate until called and may prevent them from communicating with one another until they have been examined or the hearing is ended." The decision to separate witnesses is within the discretion of a court.[7]

¶ 48. The aim of exclusion and separation orders is to exercise restraint on witnesses tailoring their testimony to that of earlier witnesses; to detect testimony that is less than candid; and, when a witness's testimony is interrupted by a recess, to prevent improper attempts to influence the testimony in light of the testimony already given.[8]

¶ 49. Courts imposing a separation or exclusion order and parties seeking such an order should specify the scope of the order so as to prevent potential misunderstandings, including whether the order limits communications between witnesses and attorneys. Thus, a circuit court might state, for example, which witnesses the order applies to, how long the order applies with respect to each witness, whether the witnesses should remain physically separate, whether the witnesses should not discuss the case or their testimony

exclusion of the victim is necessary to provide a fair trial for the defendant or a fair fact-finding hearing for the juvenile.

[7] *Fletcher v. State*, 68 Wis. 2d 381, 388, 228 N.W.2d 708 (1975); *Abraham v. State*, 47 Wis. 2d 44, 54, 176 N.W.2d 349 (1970); *Ramer v. State*, 40 Wis. 2d 79, 82–83, 161 N.W.2d 209 (1968).

[8] *Geders*, 425 U.S. at 87; *United States v. Strauss*, 473 F.2d 1262, 1263 (3d Cir. 1973); *Capital Cab Corp. v. Anderson*, 85 N.Y.S.2d 767, 769 (N.Y. 1949); *Nyberg*, 75 Wis. 2d at 409.

with another witness, whether the witnesses should not be told directly or indirectly what other witnesses have said, whether the witnesses should not read a transcript of another witness's trial testimony, and whether a witness should not confer with counsel during the witness's testimony, including during a recess.[9] Whether an order should limit or prohibit counsel in a criminal case from conferring with the defendant raises special issues.[10]

---

[9] For a discussion of cases involving some of these orders, see, for example, John W. Strong, 1 *McCormick on Evidence* § 50, at 209, n.15 (1999).

[10] *Geders,* 425 U.S. at 91 (preventing defendant from consulting his counsel about anything during a 17–hour overnight recess in the trial between his direct and cross-examination deprived defendant of his right to the assistance of counsel guaranteed by the Sixth Amendment); *State v. James County,* 41 So. 702, 704 (La. 1906) (order keeping witnesses where they could not hear testimony given at trial did not prevent district attorney from communicating with state witnesses); *State v. Scott,* 56 So.2d 839, 840 (Miss. 1952) (defense counsel allowed to conference with all defendant's witnesses, but not all together as a group); *L. Williams v. State,* 35 Tex. 355 (Tex. 1871) (placing the state's witnesses under a separation or exclusion order does "not deprive the district attorney of the right to confer with them in a proper manner; this is his privilege, and, moreover, may be regarded as his duty"). *See also* 6 Wigmore, *Evidence* ch. 63, § 1840 at 472 (Chadbourn rev. 1976) ("whether an *attorney* in the cause *may consult* with a sequestered witness has been the subject of some difference of opinion; the possibilities of abuse by unscrupulous persons . . . are certainly great") (reference to footnote omitted).

For cases stating that orders preventing defendants from consulting their attorneys during an overnight recess infringe upon the Sixth Amendment right to counsel, see *United States v. Venuto,* 182 F.2d 519 (3d Cir. 1950); *People v. Nobble,* 248

¶ 50.  For the reasons set forth, I write separately.

¶ 51.  I am authorized to state that Justice N. PATRICK CROOKS joins this opinion.

N.E.2d 96 (Ill. 1969); *Commonwealth v. Werner,* 214 A.2d 276 (Pa. 1965). *But see People v. Prevost,* 189 N.W. 92 (Mich. 1922).

For cases discussing orders preventing defendants from consulting their attorneys during a brief routine recess during the trial day, see *United States v. Schrimsher,* 493 F.2d 848 (5th Cir. 1974); *United States v. Crutcher,* 405 F.2d 239 (2d Cir. 1968), *cert. denied,* 394 U.S. 908 (1969).