**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**March 9, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1893-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF587

**IN COURT OF APPEALS**
**DISTRICT II**

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

STEVEN MICHAEL STEINPREIS,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Sheboygan County: ANGELA W. SUTKIEWICZ, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Steven Michael Steinpreis appeals a judgment of conviction for repeated sexual assault of the same child and an order denying his postconviction motion.  He raises three issues on appeal: (1) his trial counsel provided constitutionally ineffective assistance by failing to object to the prosecutor's references to well-known cases of alleged sexual assault involving celebrities and public figures; (2) the circuit court erred by denying, without in camera review, his motion seeking access to the victim's counseling records; and (3) the court's decision to prohibit Steinpreis's expert witness from testifying about how certain types of counseling can affect the reliability of a child's memories violated his constitutional right to present a defense.  We reject Steinpreis's arguments and affirm.

## BACKGROUND

¶2    Steinpreis was charged in an amended Information with one count of repeated sexual assault of a child and one count of exposing his genitals to a child. The charges stemmed from allegations by Steinpreis's ten-year-old granddaughter, Tiffany,[1] that over the course of several years Steinpreis repeatedly had sexual contact with her.  Specifically, Tiffany had told her mother that Steinpreis had been making her sit in his lap, "poking" her with his erect penis, making Tiffany touch it, watching her shower, and "tickling" her vagina.  Police conducted a forensic interview in which Tiffany elaborated on her statements, including her description of over-the-clothes touching that occurred while she was sitting on Steinpreis's lap during a birthday party on August 11, 2018.

---

[1] Consistent with the policy underlying WIS. STAT. RULE 809.86 (2019-20), we refer to the victim using a pseudonym.  All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶3      Steinpreis's defense was twofold: first, that he was a person of good character and the alleged assaults would be uncharacteristic of his positive reputation; and second, that Tiffany's memory of the sexual assaults was the "result of embellishment and misremembrance." At trial, Steinpreis presented more than twenty character witnesses in addition to testifying in his own defense. He also presented testimony from Dr. David Thompson, a clinical and forensic psychologist, regarding factors that can affect the reliability of a child's statements.

¶4      A jury convicted Steinpreis of repeated sexual assault of a child but acquitted him of the exposure charge. Steinpreis filed a postconviction motion, alleging his attorney provided constitutionally ineffective assistance by failing to object to some of the prosecutor's statements during closing argument. Specifically, the prosecutor repeatedly referred to numerous celebrities who had become embroiled in controversy as a result of alleged or proven sexual harassment and assaults.

¶5      The content and context of the prosecutor's comments is essential to this case. The prosecutor began his closing arguments by noting that Steinpreis had marshaled an impressive array of character witnesses, including a reverend and a mayor. The prosecutor urged the jury not to give those witnesses' testimony greater weight than the victim's, adding, "Because look at some of those cases that have come out recently. Those individuals where no one would ever expect that person or that type of person would commit a sexual assault. There's a long list."

¶6    The prosecutor then specifically named Larry Nassar, Dennis Hastert, Matt Lauer, Bill Cosby, Charlie Rose, Harvey Weinstein, Kevin Spacy, Bo Ryan, Jerry Sandusky, and others.[2]  For each of the named individuals, the prosecutor mentioned the person's position of authority or perceived positive contributions to the community.  The prosecutor then noted that the person had been accused or convicted of sexual misconduct that was contrary to the person's generally positive public image.  The prosecutor concluded this line of argument by stating that "in this case, it doesn't matter who testified, it doesn't matter how many people testified, it matters what they said."[3]  The prosecutor referred the jurors to the instruction regarding the credibility of witnesses and urged them to consider a variety of factors, such as demeanor and opportunity to witness the relevant conduct, in deciding the weight to be given their testimony.

¶7    Following a *Machner*[4] hearing, the circuit court denied Steinpreis's postconviction motion.  It noted it had given Steinpreis considerable leeway at trial to present a character defense and had not limited the number of witnesses he could call.  The court did not view the prosecutor's closing argument as impermissible commentary about facts not in evidence, but rather it regarded the argument as bringing home the point that the witnesses "may not know a person

---

[2] Steinpreis uses the "Me Too" movement as a shorthand reference for these individuals. We decline to use this terminology given the difficulty associated with judicially defining a social movement, of which it is unclear that all of the named celebrities and public figures were prominent examples.

[3] This is not to say this was the prosecutor's final statement on this line of closing argument.  The prosecutor at times referred back to this argument during the remainder of the closing, for example by mentioning the "long list of sex assault people I gave to you," who he argued did not commit their crimes in public but did so covertly when they believed no one was watching.

[4] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

that well, they may seem like a nice person … but you don't know what goes on behind closed doors."

¶8 On appeal, Steinpreis argues the circuit court erred by denying his postconviction motion alleging ineffective assistance of trial counsel. He challenges two other rulings relating to his efforts to cast doubt on the reliability of Tiffany's allegations. First, Steinpreis challenges the court's denial, without in camera review, of his *Shiffra-Green*[5] motion seeking Tiffany's counseling records. Second, Steinpreis argues the court's decision to prohibit Thompson from testifying about how trauma counseling can affect the reliability of a child's sexual assault allegations violated his constitutional right to present a defense.

## DISCUSSION

*I. Ineffective assistance of counsel related to the prosecutor's closing arguments*

¶9 Steinpreis first argues his attorney provided constitutionally ineffective assistance by failing to object to the prosecutor's arguments concerning the examples of celebrity sexual misconduct. The Sixth Amendment guarantees a defendant the effective assistance of counsel. *State v. Savage*, 2020 WI 93, ¶27, 395 Wis. 2d 1, 951 N.W.2d 838. To prevail on an ineffective assistance claim, the defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Id.*

¶10 We review an ineffective assistance of counsel claim using a mixed standard of review. *Id.*, ¶25. The circuit court's factual findings, including those

---

[5] *See State v. Shiffra*, 175 Wis. 2d 600, 499 N.W.2d 719 (Ct. App. 1993), *abrogated by State v. Green*, 2002 WI 68, 253 Wis. 2d 356, 646 N.W.2d 298.

regarding trial counsel's conduct and strategy, will not be overturned unless they are clearly erroneous, but we review de novo whether counsel's conduct constitutes constitutionally ineffective assistance. *Id.* If the defendant fails to establish either prong, we need not address the other. *Id.*

¶11 To demonstrate deficient performance, the defendant must show that his or her attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.*, ¶28. We presume that counsel's conduct fell within the wide range of reasonable professional assistance, and we will grant relief only upon a showing that counsel's performance was objectively unreasonable under the circumstances. *Id.* Prejudice is demonstrated by showing a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Id.*, ¶32.

¶12 Emphasizing the special role that prosecutors play in the criminal justice system, Steinpreis asserts the prosecutor's comments about well-known alleged sexual assault perpetrators crossed the line beyond permissible commentary on the evidence and introduced non-evidentiary matters for the jury's consideration, contrary to cases like *State v. Neuser*, 191 Wis. 2d 131, 528 N.W.2d 49 (Ct. App. 1995). Steinpreis further argues the prosecutor's tactics of not introducing any responsive character evidence and waiting until closing arguments to "ambush" Steinpreis with comparisons to those well-known alleged perpetrators was unfair. Finally, he notes his attorney had no reason for failing to object, other than that he did not believe there was a meritorious basis for an objection.

¶13 We conclude Steinpreis's trial counsel was not deficient for failing to object to the prosecutor's closing comments. We agree with the circuit court's

reasoning that the prosecutor's argument was a fair commentary upon Steinpreis's character defense. The prosecutor made the point that limited interaction with an individual oftentimes is not reflective of that person's true personality and nature, using well-known celebrities and public figures as examples. He urged the jurors to refer to proper factors for assessing witness credibility in determining what weight to give the witnesses' testimony.

¶14 Contrary to Steinpreis's claims, the comments were not an unfair attempt to insert facts not in evidence for the jury to use in its deliberations. Rather, the prosecutor's argument was, at its core, an appeal to the jury to use its common sense and knowledge in evaluating the persuasiveness of Steinpreis's bevy of character witnesses. *See e.g.*, **State v. Smith**, 2012 WI 91, ¶36, 342 Wis. 2d 710, 817 N.W.2d 410 (observing that jurors can, and should, use common sense and life experience in evaluating the totality of the trial evidence).

¶15 Additionally, we note Steinpreis's trial counsel adeptly addressed the prosecutor's comments during his own closing argument. Trial counsel stated he took "significant issue with the State trying to compare Mr. Steinpreis to the laundry list [of individuals] that I couldn't even keep track of because it was getting so long." Trial counsel called the State's comparison "ridiculous," pointing out that, unlike Steinpreis, many of the named individuals had dozens or more of alleged victims who ultimately "came out of the woodwork" after the first allegation was made. Counsel noted that Steinpreis had managed a junior bowling program, coming into contact with "probably thousands of kids" over the years, and individuals Steinpreis had worked with in that capacity had appeared as character witnesses on Steinpreis's behalf with no allegations of any impropriety.

¶16    In short, we perceive nothing deficient in trial counsel's failure to object to, or handling of, the prosecutor's closing argument. *See State v. Wheat*, 2002 WI App 153, ¶23, 256 Wis. 2d 270, 647 N.W.2d 441 (holding counsel does not perform deficiently by failing to raise meritless issue).

## II. *Denial of Steinpreis's Shiffra-Green motion without in camera review*

¶17    Next, Steinpreis argues the circuit court erred by denying his *Shiffra-Green* motion without conducting an in camera review of Tiffany's counseling records. A defendant who seeks the medical records of an alleged victim must make a preliminary showing that the records are reasonably likely to contain information necessary to a determination of guilt or innocence. *State v. Green*, 2002 WI 68, ¶32, 253 Wis. 2d 356, 646 N.W.2d 298. Whether the defendant made a sufficient preliminary showing is an issue implicating the defendant's constitutional right to a fair trial and is therefore reviewed de novo. *Id.*, ¶20. However, we review factual findings made by the circuit court under the clearly erroneous standard. *Id.*

¶18    Steinpreis's defense theory as it pertains to this issue was that Tiffany's "memory of some otherwise innocuous occurrences was inadvertently embellished into the memory of something criminal because of extant factors affecting the reliability of her memory." Steinpreis explains that, to support this theory, he sought Tiffany's counseling records, "theorizing that she had undergone memory-altering therapy." His expert, Dr. Thompson, was prepared to testify that the use of certain types of evidence-based therapy—specifically, trauma-based CBT and EMDR—involved efforts to "reframe" a traumatic event in ways that could potentially affect a person's recollection.

¶19   We agree with the circuit court's reasoning in concluding that Steinpreis failed to make a preliminary showing sufficient to warrant in camera review of Tiffany's counseling records.  It is undisputed that any counseling in this case occurred after the forensic interview.   Thompson acknowledged in his testimony that any of his conclusions regarding the effect of counseling would not have applied to Tiffany's description of the sexual contact during her forensic interview or prior.

¶20   As a result, the counseling records—even assuming they described the type of therapy Thompson was concerned about—could only have arguably supported Steinpreis's defense insofar as Tiffany's post-counseling accusations (i.e., her trial testimony) contained new or materially different information than the disclosures to her family and police.  Although Steinpreis vaguely refers to "inconsistencies" in Tiffany's story highlighted by his attorney at trial, he does not undertake the comparative analysis required to demonstrate that her allegations had changed after counseling.  And prior to Tiffany's testimony, Steinpreis could not establish there was a reasonable likelihood that her counseling records contained information necessary to the determination of his guilt, because it was not clear that any of Thompson's reliability concerns would manifest.

¶21   We are aware of the timing issue presented by these unique facts and the nature of Thompson's opinion.  Steinpreis likely would not know until trial whether and how Tiffany's testimony diverged from her initial pre-counseling disclosures, making any pretrial motion seeking counseling records arguably premature.  The circuit court addressed this by noting that any discrepancies could be explored on cross-examination and were fair game for argument.  We add that the defense could have renewed its motion for the counseling records after

9

Tiffany's testimony, which occurred near the start of the trial and days prior to Thompson's testimony.

¶22    Regardless, the difficulties inherent in making a preliminary showing under these circumstances do not warrant a more permissive standard for obtaining review of a victim's counseling records.  Given the strong public policy favoring the protection of counseling records, the defendant must make "a fact-specific evidentiary showing, describing as precisely as possible the information sought from the records and how it is relevant to and supports his or her particular defense." *Green*, 253 Wis. 2d 356, ¶¶32-33.  Again, here, this showing could not be made prior to trial given Thompson's concession that any potential effects of counseling on the reliability of Tiffany's allegations could not have affected her initial disclosures to her family and police.  Prior to trial, it was only Steinpreis's speculation or conjecture that Tiffany's trial testimony would deviate from her pretrial accounts in a way that could potentially be explained by the type of therapy she was undergoing.  *See id.*, ¶33.

¶23    To the extent Steinpreis suggests the counseling records were necessary for Thompson to offer an opinion regarding the effect of repeated interviewing, we also deem his preliminary showing insufficient.  Thompson was clear during his testimony that in any case involving counseling, it would be helpful to know whether and how many times the victim had been asked to recount the abuse during therapy.  Making counseling records available for in camera inspection on the basis that the victim may have been asked to describe the assault is tantamount to holding that a victim's records are subject to disclosure merely because he or she is receiving counseling.  This result is proscribed by *Green*.  *See id.*

## III. *Restriction of Thompson's expert testimony*

¶24 Despite being denied access to Tiffany's counseling records, Steinpreis requested at trial that Thompson be allowed to testify that counseling is one of the factors he uses when assessing the reliability of a child's accusations. The victim objected on the basis that such testimony would involve disclosing that she was receiving counseling. The State argued that such testimony would lack relevance, noting that Thompson had no basis to conclude Tiffany was engaged in the type of therapy he found problematic, nor would Thompson opine that such therapy had actually affected Tiffany's recollection even if it had been used.

¶25 The circuit court agreed that the proposed testimony was speculative and prohibited it.[6] Steinpreis argues this prohibition violated his right to present evidence and, in this instance, application of the privilege for medical records works an arbitrary or disproportionate effect in light of the purpose for the rule. *See **State v. St. George***, 2002 WI 50, ¶¶14-15, 53-55, 252 Wis. 2d 499, 643 N.W.2d 777. Steinpreis contends that "after [he] lost his ***Shiffra-Green*** motion, the therapy-related evidence that he sought to introduce at trial was limited and minimally invasive."[7]

---

[6] The circuit court additionally noted that "we do have the 950 concern because the victim does not want it disclosed that she was in counseling." The parties dispute whether this was a reference to WIS. STAT. § 904.05 and what effect such a reference should have on our analysis. We deem it unnecessary to engage in a detailed exploration of what, precisely, the circuit court meant because the matter of the victim's wishes was clearly an additional point of reasoning, one we need not address given our conclusion that Steinpreis failed to make a threshold relevancy showing regarding the prohibited testimony.

[7] The State argues Steinpreis has forfeited this argument by failing to raise it in the circuit court. Even assuming the State is correct, we disregard the forfeiture and reach the merits of Steinpreis's argument in this instance.

¶26     As the State points out, the flaw in Thompson's proposed testimony was not that it conflicted with the medical records privilege. Rather, the circuit court's point was more basic: because Thompson could not testify that suggestive counseling techniques had actually been used, and he could not opine that such techniques tainted Tiffany's recollection even if they had, Thompson's testimony was irrelevant and speculative. Demonstrating the relevancy of Thompson's testimony was a threshold requirement for its admissibility on constitutional grounds. *See* ***State v. Schmidt***, 2016 WI App 45, ¶74, 370 Wis. 2d 139, 884 N.W.2d 510.

¶27     Evidence is relevant if it has any tendency to make the existence of a fact that is of consequence to the determination more probable or less probable. WIS. STAT. § 904.01. Tiffany's credibility was certainly a key issue, but for the reasons explained above, the prohibited testimony would not have allowed the jury to meaningfully assess whether the concepts Thompson discussed had any effect on Tiffany's testimony. Thompson's testimony would only have invited the jury's speculation, as the circuit court properly recognized when it denied admissibility.

        *By the Court.*—Judgment and order affirmed.

        This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.