*496 MICHAEL J. GABLEMAN, J.
¶ 1. This case is a review of a published decision of the court of appeals[1] reversing an order of the Wood County Circuit Court, the Honorable Todd P. Wolf, presiding. The defendant, Jessica A. Nellessen ("Nellessen"), sought to have the identity of a confidential informer disclosed pursuant to Wis. Stat. § 905.10(3)(b) (2011-12).[2] The circuit court denied Nellessen's motion, and she appealed. The court of appeals reversed, holding that the circuit court improperly denied Nellessen's motion without first conducting an in camera review of the confidential informer's expected testimony.
¶ 2. The issue presented to us on appeal is whether the circuit court erred by denying Nellessen's motion without conducting an in camera review. While this court has previously articulated the standard by which a circuit court must review the evidence presented during an in camera review under Wis. Stat. § 905.10(3)(b), we have not had occasion to elaborate on what a defendant must show in order to trigger an in camera review. We conclude that the required showing is a reasonable possibility, grounded in the facts and circumstances of the case, that a confidential informer may have information necessary to the defendant's theory of defense. Because we conclude Nellessen failed to meet this burden, we reverse the court of appeals and remand the case to the circuit court for further proceedings.
*497 I. FACTS AND PROCEDURAL BACKGROUND
¶ 3. On June 28, 2011, Rico Scott ("Scott") made arrangements to pick up his cousin Richard Green ("Green") in Minneapolis and drive him to Stevens Point. Scott contacted his girlfriend, Miranda Brooks ("Brooks"), regarding the trip and Brooks then asked Nellessen to drive Scott, Brooks, and another individual named William George ("George"), to Minneapolis in order to pick up Green and return to Stevens Point. Nellessen agreed to do so.
¶ 4. Nellessen and her companions — Scott, Brooks, and George — met with Green when they arrived in Minneapolis. Scott saw Green get into Nellessen's car and produce two small bags of marijuana. Scott removed a small amount of this marijuana from one of the bags and placed it in a prescription bottle. Green hid the remaining marijuana in a computer tower in the trunk of Nellessen's car.
¶ 5. It is unclear whether Nellessen or Brooks were in the car when Green produced the marijuana, or whether they saw the marijuana at all, but Nellessen later admitted that she had smelled the odor of raw marijuana in the car.
¶ 6. While en route back to Stevens Point, Officer Jason Punke of the Marshfield Police Department pulled Nellessen's car over on the grounds that Nellessen's view was obstructed by several items hanging from the rear view mirror. Officer Punke testified at the preliminary hearing that he smelled the odor of raw marijuana in the car. Officer Punke called for backup. Officer Punke and Detective James Cramm, also from the Marshfield Police Department, conducted a full search of Nellessen's car, during which they discovered the marijuana that Green had previ *498 ously hidden in the car's trunk. The search also yielded a digital scale covered with marijuana residue.
¶ 7. Nellessen, Green, and George were charged with possession of marijuana as parties to a crime pursuant to Wis. Stat. §§ 939.05, 961.41(lm)(h)2.[3]
¶ 8. After Nellessen's preliminary hearing, her counsel filed a motion to suppress the evidence found during the search of her car. The circuit court held a hearing on Nellessen's motion on November 7, 2011. During the hearing, Detective Cramm testified that he instructed Officer Punke to pull over Nellessen's car based on a tip from a confidential informer. According to Detective Cramm's testimony, a confidential informer contacted the Stevens Point Police Department with information that Nellessen's car had gone to Minneapolis and was returning to Stevens Point by way of Marshfield with a pound of marijuana in the car. Detective Cramm testified that the information regarding the confidential informer had been relayed to him by Detective John Lawrynk of the Stevens Point Police Department at approximately 7 p.m. on the same day Nellessen and her companions travelled to Minneapolis.
¶ 9. After the preliminary hearing, Nellessen filed a timely motion with the circuit court to compel disclosure of the identity of the confidential informer. Nellessen argued, in pertinent part, that "[i]f the informant knew the direction of travel and the existence of controlled substances in the vehicle, it is reasonable to assume that the informant may also know whether the defendant was aware that the marijuana was in the vehicle." A hearing on this *499 motion was held December 12, 2011. At the hearing, Nellessen argued that, due to the detailed information provided by the informer to the Stevens Point Police Department regarding Nellessen's route back to Stevens Point, it was reasonable to assume the informer also had information regarding how the marijuana was placed in the car and whether Nellessen was even aware that the marijuana was in the car. Nellessen asserted she did not know about the marijuana in her car and that the informer could potentially have information supporting her defense to the charges against her.
¶ 10. The circuit court denied Nellessen's motion to compel disclosure of the informer. The circuit court determined that the defense had not made a sufficient showing to warrant an in camera review.[4] The circuit court also expressed concern that, if it granted Nellessen's motion based on the showing she made, the circuit court would need to conduct an in camera review virtually every time a defendant filed a motion under Wis. Stat. § 905.10(3)(b). Consequently, the circuit court concluded that Nellessen had failed to meet her burden and denied her motion to disclose the identity of the informer.
¶ 11. Nellessen appealed the circuit court's ruling, and the court of appeals reversed the decision of the circuit court. The court of appeals, in a published decision, reasoned that "[t]he issue in dispute is *500 whether Nellessen was aware that the marijuana was in her trunk. The question before the circuit court was therefore whether the informant might have information that bears upon that aspect of the State's case against Nellessen." State v. Nellessen, 2013 WI App 46, ¶ 14, 347 Wis. 2d 537, 830 N.W.2d 266. In the court of appeals' view, "whenever the facts suggest a possibility that an informer has material evidence necessary to a fair trial," Wis. Stat. § 905.10(3)(b) "mandates" that the circuit court conduct an in camera review. Id., ¶ 11.
¶ 12. The State petitioned this court for review of the court of appeals' decision, which we granted.
II. STANDARD OF REVIEW
¶ 13. The issue before the court requires us to interpret Wis. Stat. § 905.10, the confidential informer statute. The interpretation of a statute is a question of law that we review de novo. State v. Dowdy, 2012 WI 12, ¶ 25, 338 Wis. 2d 565, 808 N.W.2d 691.
¶ 14. In addition to the question of statutory interpretation, we must review the circuit court's decision to deny an in camera review. We review the circuit court's factual findings concerning an in camera review under a clearly erroneous standard. State v. Green, 2002 WI 68, ¶ 20, 253 Wis. 2d 356, 646 N.W.2d 298. However, "[w]hether the defendant submitted a preliminary evidentiary showing sufficient for an in camera review implicates a defendant's constitutional right to a fair trial and raises a question of law that we review de novo." Id.
*501 III. DISCUSSION
¶ 15. The issue presented in this case centers on competing interpretations of the confidential informer statute, Wis. Stat. § 905.10. The confidential informer statute recognizes the State's general privilege regarding the protection of the identities of confidential informers. Wis. Stat. § 905.10(1).[5] Wisconsin Stat. § 905.10 codified this privilege for informers, which was first recognized in the seminal United States Supreme Court decision Roviaro v. United States, 353 U.S. 53 (1957). "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement." Roviaro, 353 U.S. at 59. The privilege is not absolute, however; the State's interest in encouraging citizens to communicate their knowledge of the commission of crimes to law enforcement officials by preserving their anonymity must be balanced against the defendant's right to prepare his or her defense. Id. at 59, 62.
¶ 16. The confidential informer statute provides three exceptions to the privilege. Wisconsin Stat. § 905.10(3)(b) is the exception at issue in this case. Under this exception, the confidential informer statute requires a two-step process for disclosing the identity of a confidential informer. First, the defendant must make an initial showing that the "informer may be able to give testimony necessary to a fair determina *502 tion of the issue of guilt or innocence . . . ." Wis. Stat. § 905.10(3)(b). Next, if the defendant satisfies this step and the State continues to invoke the privilege, the circuit court must conduct an in camera review to determine if the informer can in fact provide such testimony. Id.
¶ 17. The State argues that a defendant seeking the disclosure of a confidential informer must identify the specific testimony the informer may be able to give and demonstrate that such testimony would create a reasonable doubt as to the defendant's guilt. In contrast, Nellessen asserts a much lighter showing is required under Wis. Stat. § 905.10(3)(b), and that she is entitled to an in camera review if there is a possibility the informer may have information necessary to a fair determination of the defendant's guilt or innocence.
¶ 18. In Part A, we examine the showing necessary under Wis. Stat. § 905.10(3)(b) to trigger an in camera review. In Part B, we consider whether the circuit court erred in denying Nellessen's motion to compel disclosure of the identity of the confidential informer. We conclude that the circuit court appropriately determined that Nellessen had not met her initial burden under § 905.10(3)(b) and thus was not entitled to an in camera review.
A. The Defendant's Initial Showing Under Wis. Stat. § 905.10(3)(b) Is A Modest One
¶ 19. This court has yet to squarely address the issue of what showing is necessary under the confidential informer statute to trigger an in camera review. Previously, when we have been called upon to interpret *503 Wis. Stat. § 905.10(3)(b), our focus has been on the requirements of the in camera review, rather than the showing a defendant must make in order to reach the hearing.[6] See State v. Outlaw, 108 Wis. 2d 112, 321 N.W.2d 145 (1982); State v. Vanmanivong, 2003 WI 41, 261 Wis. 2d 202, 661 N.W.2d 76. However, we have been clear that the initial showing by a defendant "is light indeed," and "does not place a significant burden upon" the defendant. Outlaw, 108 Wis. 2d at 125-26. In Outlaw, we noted that the showing a defendant must make to trigger an in camera review "need only be one of a possibility that the informer could supply testimony necessary to a fair determination" of the defendant's guilt or innocence. Id. at 126.
¶ 20. Aside from this cursory statement in Outlaw, however, this court has not elaborated on the defendant's initial burden under § 905.10(3)(b).[7] Thus, *504 to address the question before the court, we turn to the text of the confidential informer statute.
¶ 21. The relevant language of Wis. Stat. § 905.10(3)(b) provides:
Testimony on merits. If it appears from the evidence in the case or from other showing by a party that an informer may be able to give testimony necessary to a fair determination of the issue of guilt or innocence in a criminal case or of a material issue on the merits in a civil case to which the federal government or a state or subdivision thereof is a party, and the federal government or a state or subdivision thereof invokes the privilege, the judge shall give the federal government or a state or subdivision thereof an opportunity to show in camera facts relevant to determining whether the informer can, in fact, supply that testimony.
As we discussed in Outlaw, this evidentiary rule "recognizes the reality that informers are an important aspect of law enforcement and that the anonymity of informers is necessary for their effective use." Outlaw, 108 Wis. 2d at 121. Nevertheless, the State may not use the privilege of informer confidentiality "when the public interest in protecting the flow of information is outweighed by the individual's right to prepare his defense." Id. (citations omitted). In other words, if allowing the informer's identity to remain secret will prevent the defendant from presenting a defense, the privilege must give way.
¶ 22. The initial showing required under the confidential informer statute is whether it "appears from the evidence in the case or from other showing by a party that an informer may be able to give testimony *505 necessary to a fair determination of the issue of guilt or innocence . . . Wis. Stat. § 905.10(3)(b) (emphasis added). Outlaw explained that this showing is "a possibility that the informer could supply" such testimony. Outlaw, 108 Wis. 2d at 126.
¶ 23. If we look at the plain language of the confidential informer statute stated above,[8] it is clear Wis. Stat. § 905.10(3)(b) requires that a motion to compel disclosure of a confidential informer's identity must be grounded in the facts and circumstances of the case. The phrase " [i]f it appears from the evidence in the case or from other showing" implies that the motion must contain more than mere speculation that the informer has information necessary to the defendant's theory of defense. Wis. Stat. § 905.10(3)(b). If a motion grounded in mere speculation were sufficient to warrant an in camera review, a defendant would be able to obtain a hearing in every instance. In other words, the exception would swallow the rule. Endorsing the view taken by Nellessen and the court of appeals creates a significant risk of collapsing the two-step process established by the confidential informer statute. Moreover, requiring the motion to be grounded in the facts and circumstances of the case combats against the possibility for abuse from defen *506 dants seeking disclosure "solely as a retaliatory move or in the interests of his peers in order to thwart the informer's effectiveness in the future." Outlaw, 108 Wis. 2d at 141.
¶ 24. It is true that the nature of a confidential informer makes it impossible to know the specific information that the informer will have, but the statute does not require such a showing. The phrase "may be able to give testimony" confirms that the defendant's initial burden under the statute involves only a possibility the confidential informer may have information necessary to the defense.[9] Wis. Stat. § 905.10(3)(b). However, because the aspect of speculation inherent in the language of § 905.10(3)(b) must be grounded in the facts and circumstances of the case, it follows that this possibility must be reasonable.
¶ 25. Based on the foregoing analysis, we reaffirm our statement in Outlaw that the initial burden on a defendant seeking to disclose the identity of a confidential informer is "light indeed." Outlaw, 108 Wis. 2d at 126. Under § 905.10(3)(b), a defendant such as Nellessen need only show that there is a reasonable possibility that a confidential informer may have information necessary to his or her theory of defense. See Outlaw, 108 Wis. 2d at 126-27.
B. The Circuit Court Did Not Err In Denying An In Camera Review
¶ 26. We next address the circuit court's decision denying Nellessen's motion to disclose the identity of the confidential informer. Nellessen argued in her *507 motion that her knowledge of the "large quantity" of marijuana placed in her car in Minneapolis is the "critical issue at trial." Nellessen reasoned that if she was unaware the marijuana was in her car, she could not be found guilty of the charges against her; thus, if the informer had such information, it would be necessary to Nellessen's defense. However, Nellessen's motion provides only a single sentence discussing the nature of the testimony the informer may be able to provide:
The informant may be able to provide further information which will shed light on the defendant's knowledge or lack of knowledge, as the informant must have had information about the transmission of the controlled substances from their original location to the defendant's vehicle.
¶ 27. To support this conclusion, Nellessen relied on the information provided to the police by the confidential informer. In particular, she argues that because the informer knew Nellessen's car would be traveling through Marshfield, the approximate time Nellessen would be traveling through Marshfield, and that there was marijuana in the car, it would be "reasonable to assume that the informant may also know whether [Nellessen] was aware that the marijuana [was] in the vehicle." During the motion hearing, Nellessen's counsel reiterated this argument and also claimed that it was reasonable to assume the informer knew the circumstances in which the marijuana was transferred to Nellessen's car. As a result, it was also reasonable to assume that the informer may be able to provide "more information about whether [Nellessen] was aware of the marijuana in the car."
*508 ¶ 28. In its denial of the motion, the circuit court stated that, according to its reading of Outlaw, Nellessen's argument that the informer might have information that would be helpful to the defense was insufficient; instead, the informer's testimony needed to "pertain [] particularly to the facts of the guilt or innocence" of the defendant. The circuit court expressed skepticism that the informer would have information necessary to Nellessen's theory of defense. Based on the facts and circumstances of the case, the circuit court concluded that it was not reasonable to assume that the informer would have any knowledge regarding Nellessen's state of mind about the marijuana in her car. Thus, the State's interest in protecting the confidentiality of the informer outweighed Nellessen's interest in disclosure.[10]
¶ 29. The circuit court clearly laid out its understanding of the relevant case law and applied that precedent to the facts of the case. As discussed below, we agree with the circuit court and conclude that Nellessen failed to meet her burden under Wis. Stat. § 905.10(3)(b).
¶ 30. To receive an in camera review, Wis. Stat. § 905.10(3)(b) provides that a defendant must show an informer "may be able to give testimony necessary to a fair determination of the issue of guilt or innocence in *509 a criminal case . . . In Outlaw, we discussed what information might qualify as "necessary" under the statute and stated that a defendant must show that the testimony is "necessary to the defense"[11] in order to receive an in camera review. Outlaw, 108 Wis. 2d at 141 (Callow, J. concurring). We explained in Outlaw that "whether evidence from an informant is necessary [to the defense], may be determined by whether the same information or evidence is available from another source or other sources." Outlaw, 108 Wis. 2d at 142 (Steinmetz, J. concurring). In this case, four other individuals were present along with Nellessen when her vehicle was stopped. Nellessen alleged in her motion for disclosure, " [i]f the informant knew the direction of travel and the existence of controlled substances in the vehicle, it is reasonable to assume that the informant may also know whether [Nellessen] was aware that the marijuana in [sic] her vehicle." However, all the passengers in Nellessen's vehicle knew the direction of travel, and according to statements recited in the State's complaint, at least three of these passengers knew that the marijuana was in her car.
¶ 31. Nellessen also alleged in her motion that the informer "must have had knowledge about the transmission of the controlled substances from their *510 original location to the defendant's vehicle." The State's complaint explains that Scott, one of the passengers in Nellessen's car, told Detective Cramm that he was present when Green placed the marijuana in Nellessen's car. The complaint does not specifically state whether Scott indicated that Nellessen was also present, but it is clear that Scott could provide information about "the transmission of the controlled substances from their original location to the defendant's vehicle." Accordingly, even if the informer did have information about Nellessen's knowledge of the marijuana, Nellessen has failed to make any showing that the information was not available from other sources. See Outlaw, 108 Wis. 2d at 125-26 (explaining that the burden of the initial showing to receive an in camera review is on the defendant making the request).
¶ 32. Moreover, Wis. Stat. § 905.10(3)(b) provides that an in camera review should be granted "[i]f it appears from the evidence in the case . . . that an informer may be able to give testimony necessary to a fair determination of the issue of guilt or innocence . . . ." (Emphasis added). This suggests that a circuit court should consider all of the evidence to determine whether to grant an in camera review, not just the contents of the defendant's motion. Here, the circuit court held a hearing on the defendant's motion after a preliminary hearing had already established that: (1) Nellessen admitted that she could smell raw, or unsmoked, marijuana in her vehicle; (2) Officer Punke testified that Nellessen's car smelled of raw marijuana when it was stopped; (3) Nellessen told Detective Cramm that everyone in the car had been smoking marijuana; (4) Nellessen's cell phone indicated she had been involved in marijuana trafficking; (5) Nellessen's trunk contained a digital scale with *511 marijuana residue on it, in addition to two large bags of marijuana. In addition, the State's complaint against Nellessen explained that after her vehicle was stopped, she consented to a search of her cellular telephone. A text message from "Andy T" told Nellessen that he was "craving some weed," and Nellessen responded, "Oh, I see. Well, I can't help u [sic] now but I'll call u wen [sic] I get back okay."
¶ 33. Given the strength of the evidence against Nellessen, the circuit court could reasonably conclude that the informer's testimony would not be necessary to the defense because it could not " 'have created in the minds of the jurors a reasonable doubt' regarding a defendant's guilt." Outlaw, 108 Wis. 2d at 140 (Callow, J. concurring) (quoting United States v. Eddings, 478 F.2d 67, 72 (6th Cir. 1973)). The circuit court's decision squares with Justice Callow's concurrence in Outlaw.'[12] Although the circuit court did not recite the exact language of Outlaw, it correctly applied the decision's analytical framework. Nellessen's entire motion is speculative, and she fails to sufficiently ground her assertions in the facts and circumstances of the case. Wis. Stat. § 905.10(3)(b). Again, we acknowledge that to a certain extent, motions under § 905.10(3)(b) will necessarily be speculative. Nevertheless, we agree with the circuit court that, in this case, Nellessen's motion failed to satisfy the minimal showing required under Wis. Stat. § 905.10(3)(b) to warrant an in camera review.
*512 ¶ 34. Nellessen's motion fails to articulate why or how the informer would have any knowledge of what Nellessen knew or did not know about the marijuana in her car. Instead, as the circuit court correctly observed, Nellessen's rationale for revealing the identity of the informer would essentially mandate an in camera review for all motions under § 905.10(3)(b). The thrust of Nellessen's motion is that because the informer knew some things about Nellessen's car and her companions' activities, the informer might know other things that would be helpful to the defense. This argument fails to meet the minimal showing necessary to warrant an in camera review. The showing required for an in camera review cannot rest solely on mere speculation as to what additional information the informer might know, without sufficient reference to the facts and circumstances of the case.[13] Such an approach would invite defendants to go on "mere fishing expedition[s]," United States v. Valles, 41 F.3d 355, 358 (7th Cir. 1994), on the basis of speculation and suspicion, which would effectively allow the exception to the confidential informer privilege to nullify the privilege altogether.
¶ 35. Thus, we conclude that Nellessen's motion does not establish a reasonable possibility that the informer may be able to give testimony necessary to her defense. See Outlaw, 108 Wis. 2d at 141 (Callow, J. *513 concurring). We are satisfied that the circuit court appropriately analyzed the requirements in § 905.10(3)(b) and reached a reasonable conclusion.
IV. CONCLUSION
¶ 36. In summary, we hold that a defendant seeking to disclose the identity of a confidential informer pursuant to Wis. Stat. § 905.10(3)(b) must show that there is a reasonable possibility that the informer may be able to provide testimony necessary to the defendant's theory of defense. We conclude that the circuit court appropriately determined that Nellessen had not met her initial burden under § 905.10(3)(b) and thus was not entitled to an in camera review. We therefore reverse the decision of the court of appeals and remand the case to the circuit court for further proceedings.
By the Court. — The decision of the court of appeals is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

 State v. Nellessen, 2013 WI App 46, 347 Wis. 2d 537, 830 N.W.2d 266.

 All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

 The record suggests that Scott and Brooks were not charged in connection with this incident, but is silent as to why.

 Wisconsin Stat. § 905.10(3)(b) provides that, if an in camera review is conducted, "[t]he showing will ordinarily be in the form of affidavits but the judge may direct that testimony be taken if the judge finds that the matter cannot be resolved satisfactorily upon affidavit." It is unclear from Nellessen's motion whether she was requesting an in camera review by affidavit or by testimony.

 Wisconsin Stat. 905.10(1) provides:
The federal government or a state or subdivision thereof has a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of law to a law enforcement officer or member of a legislative committee or its staff conducting an investigation.

 In State v. Outlaw, we held that the State's burden during the in camera review is to show only what the confidential informer's testimony will be. State v. Outlaw, 108 Wis. 2d 112, 127, 321 N.W.2d 145 (1982). After the in camera review, the circuit court must determine if there is a reasonable probability that the informant can provide testimony "necessary to the defense." Id. at 141 (Callow, J. concurring); Wis. Stat. § 905.10(3)(b). The testimony is necessary to the defense if it could create a reasonable doubt in the minds of the jury. Id. at 140 (Callow, J. concurring). Although Justice Callow's opinion in Outlaw is a concurrence, it represents the majority opinion of the court on the appropriate test to be applied at the in camera review. State v. Dowe, 120 Wis. 2d 192, 195, 352 N.W.2d 660 (1984).

 Certain language in State v. Vanmanivong, 2003 WI 41, 261 Wis. 2d 202, 661 N.W.2d 76, might appear to suggest a different standard for a defendant's initial showing under Wis. Stat. § 905.10(3)(b). However, it is clear from Outlaw, 108 Wis. 2d 112, and the language of the statute that the showing for an in camera review requires only a reasonable possibility *504 that an informer may have evidence necessary to the defense.

 The interpretation of a statute begins with the language of the statute. If the meaning of the statute is plain, the analysis ends. State ex rel. Kalal v. Circuit Court for Dane County, 2004 WI58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. In order to determine the plain meaning of a statute, we give the statutory language its "common, ordinary, and accepted meaning . ..." Id. Furthermore, statutes are not read in isolation. Rather, the court must read statutory language "in the context in which it is used . .. ." Id., ¶ 46. This is done to give purpose to the entire statutory scheme and avoid "absurd or unreasonable results." Id.

 The word "may" is "[u]sed to indicate a certain measure of likelihood or possibility." The American Heritage Dictionary of the English Language 1086 (5th ed. 2011).

 In discussing the testimony that the informer would be able to provide, the circuit court framed the legal standard in terms of "relevance" to Nellessen's theory of defense. Legal relevance is not the standard for assessing a motion under the confidential informer statute. See Outlaw, 108 Wis. 2d at 141 (Callow, J., concurring) (rejecting the lead opinion's relevancy standard and holding that "an essential condition precedent to disclosure is that the informer's testimony be necessary to the defense"). This distinction, however, does not have an effect on our analysis.

 To clarify, at the initial stage of a request for disclosure of an informer's identity, the defendant must show that an informer may be able to provide testimony necessary to the defense. Wis. Stat. § 905.10(3)(b). If the defendant meets this burden, an in camera review must be provided, which can be conducted by affidavits or testimony. Id. Following the hearing, the judge must determine if there is a "reasonable probability" that the informer will have testimony necessary to the defense. Id. If so, the defendant's identity must be disclosed, or the charges related to the testimony must be dismissed. Id.

 As noted earlier, though technically a concurring opinion, Justice Callow's concurrence in Outlaw, 108 Wis. 2d 112, represents the majority opinion of the court on the appropriate test to be applied during the in camera review. Dowe, 120 Wis. 2d at 195.

 The dissent argues that we conflate the initial showing required for an in camera review with the "reasonable probability" standard a court must apply after the in camera review has occurred. See, e.g., dissent, ¶¶ 38, 53. The dissent misses our point. A motion to disclose that alleges what an informer "might" know could be sufficient for an in camera review in some cases, but only if the motion was reasonably grounded in the facts and circumstances of the case.