¶ 152.
DAVID T. PROSSER, J.
(dissenting). The principal issue on review is whether the decisions in State v. Shiffra, 175 Wis. 2d 600, 499 N.W.2d 719 (Ct. App. 1993), and State v. Green, 2002 WI 68, 253 Wis. 2d 356, 646 N.W.2d 298 (2002), should be overruled. Although the lead opinion by Justice Michael J. Gableman makes a number of compelling arguments about the foundation and lineage of Shiffra and Green, as well as their effect on Wisconsin law, I am ultimately persuaded that the better course for this court is to address the concerns arising from these opinions rather than to strike them down and start over. In my view, overruling the opinions is more likely to intensify controversy than to resolve it, as overruling would seriously undermine a number of prior decisions and would invite a host of new theories to protect criminal defendants at trial.
HH
¶ 153. Because of divisions within the court, Justice Gableman was assigned the responsibility of writing a lead opinion. Two justices[1] have joined him in the following conclusions:
Shiffra / Green improperly relied on [Pennsylvania v. Ritchie, 480 U.S. 39 (1987),] when it invented a right to access privileged information (specifically a complainant's privileged mental health treatment records) via a motion for in camera review. We further *81 conclude that Shiffra I Green cannot be grounded in any other legal basis, specifically any other constitutional provision.
Lead op., ¶ 8. I dissent from these conclusions, which would provide a basis for overruling Shiffra and Green and would concomitantly reverse the decision of the court of appeals.[2]
¶ 154. I read Justice Gableman's opinion as making the following observations about the Ritchie case:
(1) Defendant Ritchie sought materials from the "investigative files" of Children and Youth Services (CYS), "a protective service agency charged with investigating cases of suspected mistreatment and neglect." Ritchie, 480 U.S. at 43. The victim in Ritchie was referred to CYS by police.
(2) The Pennsylvania statute pertaining to CYS provided that "all reports and other information obtained in the course of a CYS investigation" were "confidential, subject to 11 specific exceptions." Id. One of these exceptions *82 was release "pursuant to a court order." In other words, courts were specifically authorized by statute to release confidential information in appropriate circumstances.
(3) The Supreme Court relied exclusively on Brady v. Maryland, 373 U.S. 83 (1963), the case that articulated a prosecution disclosure obligation, and cases that clarify Brady, to support its decision. The first sentence of the Court's due process analysis reads: "It is well settled that the government has the obligation to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment." Ritchie, 480 U.S. at 67 (emphasis added).
(4) The CYS was a government agency, acting on the Commonwealth's behalf, and its records were constructively in the possession of the prosecutor.
¶ 155. The lead opinion contrasts these factors with the facts in Shiffra:
(1) The defendant sought the complainant's psychiatric records from private health care providers. The State did not engage any of those providers for the complainant.
(2) The prosecutor did not possess any private records and was not required to provide them to the defendant under Brady or Wis. Stat. § 971.23. In fact, the Shiffra court did not cite Brady in its opinion.
(3) The complainant's refusal to release her records was grounded on a privilege statute, Wis. Stat. § 905.04(2), which included no provision for a court order.
*83 ¶ 156. The differences between the facts in Ritchie and the facts in Shiffra are admittedly striking. The question is whether they are constitutionally determinative. I do not believe they are.
A
¶ 157. It is important to understand the dynamics in Ritchie. The Supreme Court of Pennsylvania had relied on the Sixth Amendment's Confrontation Clause for its decision to give the defendant access to the entire CYS file related to the complainant. The Supreme Court of Pennsylvania did not rely on Brady at all.[3] It said:
The purpose of [the Confrontation Clause] is to provide an accused with an effective means of challenging the evidence against him by testing the recollection and probing the conscience of an adverse witness. ...
... "The search for truth" and the quest for "every man's evidence" so plainly the basis of the Sixth *84 Amendment.. . are as applicable to any material as to prior statements. When materials gathered become an arrow of inculpation, the person inculpated has a fundamental constitutional right to examine the provenance of the arrow and he who aims it. Otherwise, the Sixth Amendment can be diluted to mean that one may face his accusers or the substance of the accusation, except when the accuser is shielded by legislative enactment.
Commonwealth v. Ritchie, 502 A.2d 148, 152—53 (Pa. 1985), aff'd in part, rev'd in part, 480 U.S. 39 (1987).
¶ 158. Four members of the Ritchie Court— Justice Powell joined by Chief Justice Rehnquist, Justice White, and Justice O'Connor — rejected reliance on the Confrontation Clause of the Sixth Amendment. A majority of the Court instead recast the facts and relied on Brady and a due process analysis. Justice Blackmun, who was part of the majority, and Justices Brennan and Marshall, in dissent, would have recognized a Sixth Amendment Confrontation Clause right to the records sought. Justices Stevens and Scalia dissented in Ritchie solely on the ground that the Court lacked jurisdiction to hear the case. They did not weigh in on the central dispute.
¶ 159. In sum, the Supreme Court majority in Ritchie emphasized the "investigative" function of a government agency to bring the case within Brady principles and avoid a much broader holding by the Court. The Court did not absolutely slam the door against a Compulsory Process Clause claim or even a due process claim in a case with other facts. This puts the Ritchie decision in a different light.
*85 B
| 160. The lead opinion draws a sharp distinction between privilege and confidentiality, emphasizing that Wis. Stat. § 905.04 is a privilege statute with no provisions authorizing a court to order release of records, in contrast to the Pennsylvania statute governing the CYS agency, which did.
¶ 161. There is no dispute that the Ritchie Court pointed to the fact that 11 Pa. Stat. Ann. § 2215(a)(5) (Purdon Supp. 1986) provided for release of confidential records pursuant to a court order. 480 U.S. at 43-44. However, the Court also made reference to privilege:
CYS refused to comply with the subpoena, claiming that the records were privileged under Pennsylvania law. . . .
[[Image here]]
. . . The Commonwealth .. . argues that no materiality inquiry is required, because a statute renders the contents of the file privileged. Requiring disclosure here, it is argued, would override the Commonwealth's compelling interest in confidentiality on the mere speculation that the file "might" have been useful to the defense.
Although we recognize that the public interest in protecting this type of sensitive information is strong, we do not agree that this interest necessarily prevents disclosure in all circumstances.
Id. at 43, 57 (emphasis added). The Court added a footnote: "We express no opinion on whether the result in this case would have been different if the statute had protected the CYS files from disclosure to anyone, including law-enforcement and judicial personnel." Id. at 57 n.14.
*86 ¶ 162. The Ritchie Court would have been in a tougher situation if Ritchie had sought information from a sexual assault counselor, see id. at 57 (characterizing 42 Pa. Cons. Stat. § 5945.1(b) (1982) as an "unqualified statutory privilege for communications between sexual assault counselors and victims"), or from a licensed psychologist, see 42 Pa. Cons. Stat. § 5944 (1982) ("No person who has been licensed ... to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client."). I suspect the result would have been the same.[4]
¶ 163. What is important to the present case is that Wis. Stat. § 905.04 — the "Physician-patient, registered nurse-patient, chiropractor-patient, psychologist-patient, social worker-patient, marriage and family therapist-patient, podiatrist-patient and professional counselor-patient privilege" statute— has 10 statutory exceptions, including the "Abused or neglected child" exception, and that the statute must be read and construed in pari materia with Wis. Stat. § 48.981 and Wis. Stat. § 146.82(2) inasmuch as some fact situations will be covered by more than one statute. Lynch already has some of the Complainant's mental health records as a result of the State's prosecution of the Complainant's father. Thus, the privilege at issue in this case is not inviolate.
*87 c
¶ 164. Implicit in the lead opinion's conclusion that we should overrule Shiffra!Green is complete confidence in the defendant's right to vigorously cross-examine a victim/complainant at trial.
¶ 165. The Court in Ritchie was not impressed with this remedy. As the Court explained, Ritchie's daughter was the main witness against him at trial: "In an attempt to rebut her testimony, defense counsel cross-examined the girl at length, questioning her on all aspects of the alleged attacks and her reasons for not reporting the incidents sooner. Except for routine evidentiary rulings, the trial judge placed no limitation on the scope of cross-examination." Ritchie, 480 U.S. at 44-45.
¶ 166. The fact that Ritchie was afforded ample opportunity to cross-examine his daughter did not stop the Court from ruling in Ritchie's favor. In fact, no Justice voted to block Ritchie's access to his daughter's records.
¶ 167. In short, the lead opinion's comparison of Ritchie and Shiffra does not persuade me that Shiffra was so off track that it must be overruled. As Justice Shirley S. Abrahamson, Justice Ann Walsh Bradley, and Justice Annette Kingsland Ziegler persuasively point out in their separate writings, this court has embraced Shiffra and Green, and courts in many other states have extended Ritchie to cover records held by private health care providers.
II.
¶ 168. I also disagree with the lead opinions conclusion that "Shiffra / Green cannot be grounded in any other legal basis, specifically any other constitu *88 tional provision." Lead op., ¶ 8. If I didn't know better, I might think that the lead opinion was trying to reverse the court's declining caseload with a single provocative sentence.
¶ 169. There are additional bases to justify breaching a privilege or other evidentiary limitation in exceptional cases. Three examples immediately come to mind.
CONFIDENTIAL INFORMANT PRIVILEGE
¶ 170. In Roviaro v. United States, 353 U.S. 53 (1957), the Supreme Court discussed the government's privilege to withhold an informer's identity. The Court explained that the privilege "recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." Roviaro, 353 U.S. at 59. However, a "limitation on the applicability of the privilege arises from the fundamental requirements of fairness":
Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action.
Id. at 60-61 (footnote omitted).
¶ 171. In McCray v. Illinois, 386 U.S. 300 (1967), the Court identified the basis for the Roviaro ruling: namely, "the exercise of [the Court's] power to formulate evidentiary rules for federal criminal cases." 386 U.S. at 312. As this court explained in *89 State v. Nellessen, 2014 WI 84, 360 Wis. 2d 493, 849 N.W.2d 654, Wis. Stat. § 905.10(1) "codified this privilege for informers, which was first recognized in the seminal" Roviaro decision. 360 Wis. 2d 493, ¶ 15. Wisconsin's codification did not come until more than 15 years after the Roviaro decision.
THE RAPE SHIELD LAW
| 172. Similar to other exceptions to various privileges, in State v. Pulizzano, 155 Wis. 2d 633, 456 N.W.2d 325 (1990), this court held the rape shield statute, Wis. Stat. § 972.11(2) (1985-86),[5] unconstitutional as applied, to the extent it infringed on a *90 defendant's constitutional rights. The defendant, Pu-lizzano, sought to present evidence that her alleged victim "had been the victim of a prior sexual assault which involved acts similar to those alleged [ly]" performed by Pulizzano. Pulizzano, 155 Wis. 2d at 642-43. To assess Pulizzano's claim, the court described a "constitutional right to present evidence . . . grounded in the confrontation and compulsory process clauses of Article I, Section 7 of the Wisconsin Constitution and the Sixth Amendment of the United States Constitution." Id. at 645 (first citing Washington v. Texas, 388 U.S. 14, 17-19 (1967); then citing Pointer v. Texas, 380 U.S. 400, 403-06 (1965)).
¶ 173. Based on those constitutional protections, this court concluded that under certain circumstances "evidence of a complainant's prior sexual conduct may be so relevant and probative that the defendant's right to present it is constitutionally protected. Section 972.11, Stats., as applied, may in a given case impermissibly infringe upon a defendant's rights to confrontation and compulsory process." Id. at 647-48 (first citing Chambers v. Mississippi, 410 U.S. 284, 294-303 (1973); then citing Davis v. Alaska, 415 U.S. 308, 315-18 (1974)). If a defendant "establish [es] a constitutional right to present otherwise excluded evidence," then "the circuit court must then determine whether the State's interests in excluding the evidence are so compelling that they nonetheless overcome the defendant's right to present it." Id. at 656-57. During the balancing, "the state's interests are to be closely examined and weighed against the force of the defendant's right to present the evidence." Id. at 657.
*91 THERAPIST-PATIENT PRIVILEGE
¶ 174. In Johnson v. Rogers Memorial Hospital, Inc., 2005 WI 114, 283 Wis. 2d 384, 700 N.W.2d 27, the court established an exception to the therapist-patient privilege in a third-party negligence claim against a therapist whose treatment allegedly resulted in implanting false memories of child abuse against a woman's father. The court described the exception as "a public policy exception" based on the premise that "no utility can be derived from protecting careless or inappropriate therapists and their practices." Johnson, 283 Wis. 2d 384, ¶¶ 63, 65.
| 175. A brief review of existing exceptions to the confidential informant privilege, rape shield law, and therapist-patient privilege demonstrates that the Shiffra/Green framework is not the only context in which courts endeavor to strike a balance between defendants' constitutional rights and the policies underlying various evidentiary limitations. Professor Edward J. Imwinkelried has explained in general terms the nature of the balance that courts strike:
In criminal cases, the [Supreme] Court has rendered exclusionary rules of evidence such as privileges qualified or conditional by developing a balancing test to determine whether the accused's constitutional right to present evidence surmounts the exclusionary rule.. . . [T]he factors in and the nature of the balancing test employed in applying the constitutional right are essentially the same as those that a judge utilizes to determine whether a litigant's need for privileged information overrides a qualified privilege. The existence of this constitutional right transforms even purportedly absolute privileges into qualified or conditional ones.
Edward J. Imwinkelried, The New Wigmore: A Treatise *92 on Evidence § 11.3, at 1261 (2002). "[T]he vast majority of contemporary lower courts assume that the accused's constitutional right applies to evidentiary privileges and that if the excluded evidence is reliable and material enough, the right can override a privilege." Id. § 11.4.1, at 1295.
¶ 176. Overruling Shiffra and Green would needlessly cast doubt on Pulizzano, Johnson, and other precedent in which statutory schemes that reasonably promote privacy nevertheless give way to weightier constitutional concerns. Furthermore, if Shiffra and Green were overruled, creative counsel would soon find other sources for the authority to order release of privileged psychological and medical records, where necessary, and these sources might well prove far more problematic than Shiffra, which has provided a constructive approach to balancing interests.
I — I I — ( HH
¶ 177. In my view, the lead opinion is being driven by certain foundational concerns related to Shiffra/Green.
¶ 178. First, Shiffra/Green appears to open the door to pretrial discovery beyond the sensible limitations in Wis. Stat. § 971.23.
¶ 179. Second, Shiffra/Green breaches an important statutory privilege and other such breaches are likely to follow.
¶ 180. Third, Shiffra/Green embodies two extremes. The complainant may prevent the State from prosecuting a criminal case by insisting on withholding records that the court concludes are necessary for the defendant's defense. However, the complainant must surrender her privacy in confidential communi *93 cations if she releases her private psychological records as a condition for prosecuting her assailant.
¶ 181. These are very legitimate concerns. However, rather than overruling Shiffra and Green, the court would be better served by focusing on and trying to address each of these concerns by further refining and improving the existing Shiffra!Green framework. This will necessarily include the consideration of additional remedies.[6]
¶ 182. For the foregoing reasons, I respectfully dissent.

 Chief Justice Patience Drake Roggensack and Justice Rebecca G. Bradley.

 Two other justices, Shirley S. Abrahamson and Ann Walsh Bradley, would reverse the decision of the court of appeals in part for a wholly different reason. Like Justice Annette Kingsland Ziegler and the writer, Justices Abrahamson and Ann Walsh Bradley would not overrule Shiffra and Green. Justices Abrahamson and Ann Walsh Bradley's concurrence/dissent, ¶ 2. They would, however, reverse the decision of the court of appeals in part to permit a circuit court to compel release of the records pursuant to Wis. Stat. § 146.82(2)(a)4. when a complainant refuses to release records to the court for an in camera review. Id,., ¶¶ 42-43. I dissent from this specific remedy proposed by the two justices. In essence, then, I vote to affirm the decision of the court of appeals with the caveat explained in f 30 & n.6, infra, of this dissent.

 A dissenting member of the court provided additional factual insights about the case:
We do not deal with exculpatory material which the defendant has requested and which is in the possession of the Commonwealth. Although the Act authorizes disclosure of child protective service agency files to law enforcement officials investigating cases of child abuse, 11 P.S. § 2215(9) and (10), there is no indication that any law enforcement officials ever had access to the CWS files in question. Moreover, it is clear from the record that the prosecution did not have any information from the CWS records in its possession nor did the Commonwealth use CWS records in any way to prosecute appellee.
Commonwealth v. Ritchie, 502 A.2d 148, 157—58 (Pa. 1985) (Larsen, J., dissenting), aff d in part, rev'd in part, 480 U.S. 39 (1987).

 As Justice Powell explained in his opinion for the Court in Schweiker v. McClure, 456 U.S. 188 (1982): "[D]ue Process is flexible and calls for such procedural protections as the particular situation demands." 456 U.S. at 200 (alteration in original) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).

 The statute provided as follows:
(2)(a) In this subsection, "sexual conduct" means any conduct or behavior relating to sexual activities of the complaining witness, including but not limited to prior experience of sexual intercourse or sexual contact, use of contraceptives, living arrangement and life-style.
(b) If the defendant is accused of a crime under s. 940.225, any evidence concerning the complaining witness's prior sexual conduct or opinions of the witness's prior sexual conduct and reputation as to prior sexual conduct shall not be admitted into evidence during the course of the hearing or trial, nor shall any reference to such conduct be made in the presence of the jury, except the following, subject to s. 971.31(11):
1. Evidence of the complaining witness's past conduct with the defendant.
2. Evidence of specific instances of sexual conduct showing the source or origin of semen, pregnancy or disease, for use in determining the degree of sexual assault or the extent of injury suffered.
3. Evidence of prior untruthful allegations of sexual assault made by the complaining witness.
Wis. Stat. § 972.11(2) (1985-86). The statute remains substantially similar in the current codification.

 Already, the ShiffralGreen framework contemplates the circuit court placing limitations on the release of privileged mental health care records, as we indicated in Green when noting that "[w]e have confidence in . .. circuit courts [conducting an in camera review] to . . . make a proper determination as to whether disclosure of the information is necessary based on the competing interests involved in such cases." State v. Green, 2002 WI 68, ¶ 35, 253 Wis. 2d 356, 646 N.W.2d 298. Even "[w]hen consent is given, the judge scrutinizes the records to determine whether disclosure is warranted." 7 Daniel D. Blinka, Wisconsin Practice Series § 511.2, at 389-90 (3d ed. 2008).
In my view, the court should explore reasonable remedies between the extremes stated in ¶ 29, supra, so that barring testimony by the nonconsenting witness is not the sole remedy in all cases. See Blinka § 511.2, at 392. For example, Professor Blinka has suggested that
[a]nother remedy may be to permit the witness to testify but allow the defense to cross-examine about his or her refusal to divulge records requested by the court. The defense should also be permitted to argue that the witness's nondisclosure creates a reasonable doubt based on credibility concerns.

Id.